## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JARA NEAL WILLIS, ET AL.,** | § § § | |
| **Plaintiffs,** | § § | |
| **vs.** | § § | **Civil Action No. 4:13-cv-3375** |
| **ROBERT BEHAR, INDIVIDUALLY, AND NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, LLC, ET AL ,** | § § § § § | |
| **Defendants.** | § § | |

## ORDER

Pending before the Court are Plaintiff's Motion to Conditionally Certify Collective Action and Authorize Notice and for Limited Discovery (Instrument No. 62) and Plaintiff's Motion to Certify Rule 23 Class Action (Instrument No. 65).

### I.

### A.

On July 15, 2014, Plaintiff Jara Neal Willis ("Plaintiff"), individually and on behalf of all others similarly situated, filed her Second Amended Complaint against Robert A. Behar, individually, and North Cypress Medical Center Operating Company GP, LLC, and North Cypress Medical Center Operating Company, Ltd. (collectively, "Defendants") to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, and to recover unpaid hourly wages under Texas state claims of breach of contract, *quantum meruit*, money had and received, and fraud. (Instrument Nos. 1, 73). Plaintiff alleges that she and

putative class members are current and former employees employed by Defendants at the North Cypress Medical Center ("the Medical Center") in Cypress, Texas during the relevant period. Plaintiff alleges that Defendants classified her and potential class members as FLSA non-exempt employees, paid them on an hourly basis, and that she and other class members were entitled to overtime compensation for hours worked in excess of forty per week. (Instrument No. 73 at 5-6).

Defendants use the Kronos electronic timekeeping system to track hours worked by hourly employees. (Instrument No. 73 at 6). For payroll purposes, North Cypress utilizes a rounding feature of the system which rounds the recorded time to the nearest quarter hour. (*Id.*). During the new hire general orientation, Plaintiff alleges she was advised that hourly employees are to clock in for their shifts during the 14-minute window running from 7 minutes before the shift start time until 7 minutes after the start time. (Instrument No. 73 at 10). However, after she began working, Plaintiff alleges that her supervisors informed her that she was required to clock in during the 7-minute window before her shift start time and that clocking in thereafter could subject her to disciplinary action. (Instrument No. 73 at 10-11). Plaintiff alleges that her supervisors characterized the act of clocking in or out at a time which did not round in favor of North Cypress as "mooching" and prominently and frequently warned Plaintiff and other employees that mooching would be a disciplinary infraction. (*Id.*). Plaintiff alleges that North Cypress systematically tracks "mooching" in its Kronos system, regularly issued directives to managers to crack down on the practice, and posted a variety of "no mooching" signs in public view in the hallways near the electronic timekeeping devices in the hospital and employee areas. (Instrument No. 73 at 7). Plaintiff asserts that this no-mooching policy, which ensured that all rounding was in favor of North Cypress, caused incorrect overtime calculations and compensation to hourly employees. (Instrument No. 73 at 8).

Plaintiff also alleges that at the general orientation, she and potential class members were told that North Cypress provides hourly employees with a 30-minute unpaid meal break during each shift which is automatically deducted from each shift worked. (*Id.*). Plaintiff and potential class members assert that they were routinely called upon to work during and through their unpaid meal breaks because of exigent and emergent patient care issues that would arise. (Instrument No. 73 at 9-12). Plaintiff alleges that when she and her coworkers were assigned to ICU beds, their meal breaks were always interrupted by the charge nurse, other nurses, physicians, or patients and families without exception for the approximately four years that Plaintiff worked at North Cypress. (*Id.*). Plaintiff alleges that when she and potential class members were assigned to overflow unit beds, they did not receive any meal breaks. (*Id.*). Plaintiff's Second Amended Complaint asserts that North Cypress supervisors directly required, requested, and/or witnessed as hourly employees worked through their 30-minute meal breaks and that North Cypress management was actively aware that Plaintiff and potential class members worked unpaid overtime each week and accepted the benefit of their unpaid labor. (*Id.*). Plaintiff's Second Amended Complaint alleges that Defendants violated the FLSA and Texas state law, and seeks damages as a result of Defendants' FLSA violations, breach of contract, *quantum meruit*, money had and received, and fraud. (Instrument No. 73).

### B.

Plaintiff seeks to conditionally certify a FLSA main class consisting of current and former hourly employees who were inadequately paid for overtime labor as a result of Defendants' anti-mooching rounding policy, and a FLSA sub-class consisting of current and former direct-care employees who were inadequately paid for overtime work as a result of Defendants' automatic meal deductions. (Instrument No. 62). Plaintiff alleges that Defendants'

automatic meal deduction policy is illegal because it shifts the burden onto employees to ensure proper payment of wages, and because Defendants tacitly and actively discouraged employees from requesting cancellations of meal deductions. (*Id.*).

Plaintiff alleges that she is similarly situated to the proposed main class under the *Lusardi* standard because they were all hourly employees who worked overtime and had their hours improperly rounded and calculated by Defendants' anti-mooching policy and Defendants' general miscalculation of overtime. (Instrument No. 62 at 15-18). *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). Plaintiff alleges that she is similarly situated to the potential sub-class under the *Lusardi* standard because they were all direct patient care employees who worked overtime and were inadequately compensated as a result of Defendants' automatic meal break deduction policy. (Instrument No. 62 at 18-19). Additionally, Plaintiff asserts that since the suit has been filed, 23 additional plaintiffs have opted-in, and that the proposed class notice is timely, accurate, and informative and should be sent via both regular mail and email. (Instrument No. 62 at 19-24).

## C.

Defendants urge the Court to deny certification of the FLSA collective action because Plaintiff is not similarly situated to the potential class members under *Lusardi*. (Instrument No. 83). Defendants allege that vast differences exist within the proposed class in job title, type of shifts worked, type of work performed, type of hire, current employment status, alleged damages, and individual statutes of limitations, and thus the Court should deny certification and allow case-by-case analysis of each claim. (*Id.* at 17-18). Defendants also assert that an impermissible conflict of interest exists within the class because opt-in Plaintiff Woods was convicted of fraud and was terminated from Defendants' employment for cause, which would

tarnish the credibility of other class members. (Instrument No. 83 at 28-30). Additionally, Defendants assert that they did not miscalculate overtime wages or supplemental compensation, and assert that their rounding policy was overall neutral. (Instrument No. 83 at 16). Therefore, Defendants assert that no aggrieved individuals exist in this case.

Defendants also object to Plaintiff's proposed notice form, specifically the proposed method of notice by email and Plaintiff's request for potential class members' social security numbers, cell phone numbers, and other personal information. (Instrument No. 83 at 30-34). Defendants also assert that there are misleading statements in Plaintiff's proposed notice which constitute solicitation and may cause a potential class member to believe that she will receive some compensation by mere participation in the suit. (*Id.*).

### D.

Plaintiff seeks to certify a Rule 23 main class consisting of current and former employees who worked fewer than 40 hours per week during the relevant period, and a sub-class consisting of current and former employees who worked in a direct patient care position for fewer than 40 hours per week during the relevant period. (Instrument No. 65). Plaintiff alleges that the main class was inadequately compensated as a result of Defendants' "anti-mooching" policy which rounded time in favor of Defendants, and that the sub-class was inadequately compensated as a result of Defendants' policy to automatically deduct meal breaks from direct patient care employees who were then required to work through meal breaks. (*Id.*). Plaintiff's state law claims include breach of contract, *quantum meruit*, money had and received, and fraud.

Applying the legal standard under Rule 23, Plaintiff asserts that certification is proper because the class satisfies the requirements of numerosity, commonality, typicality, and because Plaintiff and her counsel can fairly and ably represent the class. First, Plaintiff alleges that the

class is so numerous that joinder is impracticable. (Instrument No. 65 at 15). Second, Plaintiff alleges that common questions of law and fact exist because the class claims all derive from the same "anti-mooching" rounding policy and automatic meal break deduction policy. (*Id.*). Plaintiff alleges that she and the class share a common question of whether Defendants knew or should have known that some employee payroll records were incorrect. (Instrument No. 65 at 16-17). Third, Plaintiff alleges that her claims are typical of the class because Plaintiff was an hourly employee subject to the same allegedly illegal policies of the Defendants and because her claims arise from the same course of conduct and legal theories as the claims of all prospective class members. (*Id.*). Fourth, Plaintiff alleges that the Mabry Law Firm, PLLC is qualified, experienced, and generally able to conduct the litigation and Mr. Mabry has practiced wage claims under the FLSA and employment law for over twenty years. (Instrument No. 65 at 18-19).

Plaintiff requests this Court to certify the action because all four Rule 23 requirements for certification have been satisfied, and questions of law or fact common to the class dominate over questions affecting only individual members, and because a class action is superior to other available methods for adjudication of this case. (Instrument No. 65 at 19). Plaintiff alleges that the class shares a common question which is answered by common proof. (Instrument No. 65 at 20-21). Plaintiff alleges that a class action is superior to other methods of adjudication in this case because: (1) the alternative would require hundreds of additional duplicative actions, (2) no class members have commenced a similar action, (3) it is desirable to concentrate litigation in the present forum where the alleged violations occurred, and (4) it will not be difficult to manage the damages in this case. (Instrument No. 65 at 22-24).

## E.

In response, Defendants deny that Plaintiff has demonstrated any of the four required elements under Rule 23. First, Defendants deny that numerosity exists in this action because Plaintiff's motion did not provide any estimate of the number of individuals who have exhausted their administrative remedies under the Texas Workforce Commission ("TWC"). (Instrument No. 80 at 15-16). Second, Defendants allege that there is no commonality because vast differences exist within the proposed class in job title, type of shifts worked, type of work performed, type of hire, current employment status, actual damages, and individual limits due to the statute of limitations. Thus, Defendants urge this Court to deny certification and allow case-by-case analysis of each state law claim. (*Id.* at 16-21). Defendants also assert that typicality does not exist in this case because an impermissible conflict of interest exists within the proposed class, which seeks to include opt-in Plaintiff Woods who was terminated from employment for cause. (*Id.* at 20-22).

Defendants state that they will assert the affirmative defense of waiver against Plaintiff and other class members who admittedly knew of the meal break deduction policy and waived their right to this action by failing to follow written procedures to cancel automatic meal deductions or otherwise notify Defendants of unpaid wages. (*Id.* at 22). Defendants also assert that other conflicts exist within the class between members who are former employees and therefore have no standing to request injunctive relief, and members who were terminated from employment for cause. (*Id.* at 24-25). Defendants deny that there was any intimidation to prevent hourly employees from reporting overtime and interrupted meal breaks, pointing out that their employees received 20,909 cancelled meal deductions and worked 416,407 hours of overtime during the same time period. (*Id.* at 28).

## II.

### A.

Rule 23(c)(1) of the Federal Rules of Civil Procedure requires that the district court determine "[a]s soon as practicable" after the initiation of an action brought on behalf of a class, whether the action should be maintained as a class action. FED. R. CIV. P. 23(c)(1); 5 MOORE'S FEDERAL PRACTICE § 23.61[1]. "A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). The party seeking the class certification bears the burden of proof. *Id.*, at 740. To be certified, the class must meet all the requirements of Rule 23(a), as well as the requirements of one of the subsections of Rule 23(b). 5 MOORE'S FEDERAL PRACTICE § 23.61[1]. The district court has broad discretion in deciding to certify, and will be reversed on appeal only for abuse of discretion. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999); *Castano*, 84 F.3d at 740; 5 MOORE'S FEDERAL PRACTICE § 23.61[1]. In determining whether a class should be certified, the court may not inquire into the merits of the suit, but may "look past the pleadings" to assess whether the Rule 23 requirements have been met. *Castano*, 84 F.3d at 744.

### B.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Impracticable does not mean impossible, rather that joinder would be "extremely difficult or inconvenient," and depends on the circumstances of the case, not merely the sheer numbers of putative class members. 5 MOORE'S FEDERAL PRACTICE § 23.22[1], [2]; *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). Relevant factors include: geographic dispersion of the class members; the ease of identification of the class members; the nature of the action; the size of each individual plaintiff's claim; and the effect of injunctive relief on future class members. *Zeidman*, 651 F.2d at 1038. In order to

prove numerosity, the moving party must proffer some evidence of the number of class members, or a reasonable estimate. *Id.*; 5 MOORE'S FEDERAL PRACTICE § 23.22[3][b].

In this case, Plaintiff alleges that the class is so numerous that joinder of all members is impracticable. (Instrument No. 65 at 15). Plaintiff's counsel represented at the certification hearing that the anticipated class size is approximately 700 direct patient care employees and 1500 overall employees. However, as Defendants note in their response, other relevant factors such as geographic dispersion of the class members and the effect of injunctive relief on future class members do not weigh in favor of certification. (Instrument No. 80 at 15-16); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The vast majority of class members work on one campus in Cypress, Texas and are not geographically dispersed. In reply, Plaintiff's counsel asserted at the hearing that Plaintiff is not seeking any injunctive relief going forward and would not prejudice any future class members, and that class members are readily identifiable in this case. The Court finds that even the mere 700 putative members of the sub-class presents a group so numerous that joinder would be impracticable. Therefore, the Court finds that Plaintiff has satisfied the numerosity requirement in its motion for Rule 23 certification.

## C.

Rule 23(a)(2) states that there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement tests the sufficiency of the class itself. 5 MOORE'S FEDERAL PRACTICE § 23.23 [3]. The test for commonality is not stringent; the class need only share one common question of law or fact to satisfy the requirement. 5 MOORE'S FEDERAL PRACTICE § 23.23[2]; *see Forbush v. J.C. Penny Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) ("The interests and claims of the various plaintiffs need not be identical. Rather, the

commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members'").

In this case, Plaintiff alleges that the class shares at least one common question of law: whether Defendants knew or should have known with reasonable inquiry that employees were working through meal periods and not being properly compensated. FED. R. CIV. P. 23(a)(2); (Instrument No. 65 at 16-17). Under the Fifth Circuit holding in *M.D. ex rel. Stukenberg v. Perry*, Plaintiff must present more than questions common to the class. 675 F.3d 832 (5th Cir. 2012) ("any competently crafted class complaint literally raises common questions"). Rather, Plaintiff must establish that the class' claims can productively be litigated at once, and not merely allege a violation of the same legal provision by the same defendants. *Id.*; Fed. R. Civ. P. 23 (a)(2). Defendants assert that there is no commonality among the class because prospective members successfully obtained cancellations of their automatic meal break deduction, and also because all current opt-in plaintiffs are former employees and therefore have no standing to pursue prospective injunctive relief. (Instrument No. 80 at 19-20). Defendants further contest that Defendants' rounding policies were biased in favor of Defendants or that Defendants discouraged hourly employees from reporting accurate shift times. At the hearing, Plaintiff clarified that she and the prospective class would seek no prospective relief in this case. Plaintiff additionally asserted at the hearing that direct patient care workers in the sub-class specifically testified that their lunch breaks are routinely interrupted to provide patient care. Plaintiff asserted that direct patient care workers make up half the total number of Defendants' former employees and included job descriptions such as registered nurses, surgical technicians, and environmental services employees. This Court finds that resolving the issue of Defendants' actual or constructive knowledge of employees' missed or interrupted meal breaks would affect all or a

significant number of the putative class members. Likewise, this Court finds that resolving the factual issue of the legality of Defendants' rounding timekeeping policies would affect all or a significant number of the proposed class. Therefore, this Court finds that Plaintiff has satisfied the Rule 23 commonality requirement as to the main class and the sub-class.

## D.

Third, "[t]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement focuses on the relationship between the interests of the representative parties and the interests of the class as a whole. 5 MOORE'S FEDERAL PRACTICE § 23.24[1] ("if the legal theories of the class representative conflict with those of the absent class members, that lack of typicality precludes certification of the class"). Typicality is satisfied if the representative's claims arise from the same events, practice, or conduct as the class plaintiffs. 5 MOORE'S FEDERAL PRACTICE § 23.24[2]. "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics as that of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." 5 MOORE'S FEDERAL PRACTICE § 23.24[4]. *See also Lightbourn v. County of El Paso, Texas*, 118 F3d. 421, 426 (5th Cir. 1997) (holding that plaintiffs met the typicality requirement where a parallel action by class members would advance legal and remedial theories similar or identical to those advanced by plaintiffs). In *Forbush*, the Fifth Circuit held that although most of the class was covered by pension plans other than the one that covered Forbush, the class met the typicality requirement because Forbush "framed her challenge in terms of Penney's general practice of overestimating social security benefits." 994 F.2d 1101, 1106 (5th Cir. 1993).

In this case, Plaintiff alleges that "[t]he claims or defenses of the representative parties [are] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3); (Instrument No. 65 at 17-18). Plaintiff alleges that she is typical of the class as an hourly employee who was subjected to Defendants' rounding policy and automatic meal break deduction even though she invariably worked during her meal breaks and, as a result, was not compensated for her work. (Instrument No. 65 at 17-18). In response, Defendants assert that Plaintiff's state law claims are not typical of the class' claims because many conflicts of interest exist among the class members. For instance, Defendants assert that Plaintiff failed to follow workplace policy in reporting her missed meals to obtain a cancelled deduction and thus waived her right to recover from Defendants under a breach of contract theory (Instrument No. 80 at 22). Additionally, Defendants note the conflict of interest in a class action that includes an opt-in Plaintiff who was terminated for endangering patient lives and other opt-in Plaintiffs were terminated for failure to report to work. (Instrument No. 80 at 24-25). However, Defendants' claims do not defeat the typicality of Plaintiff's claims, because typicality does not require completely identical claims. *See* 5 MOORE'S FEDERAL PRACTICE § 23.24[4] ("the critical inquiry is whether the class representative's claims have the same essential characteristics as that of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." In this case, the Court finds that Plaintiff has satisfied the typicality requirement under Rule 23 as to the sub-class of direct patient care employees, but that Plaintiff has not satisfied the typicality requirement as to the main class of all North Cypress employees.

**E.**

Finally, the court must determine if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy test functions to reveal

conflicts between the representatives and the class members they claim to represent. *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231 (1997). Due process requires that the rights of absent class members be protected, as absent members are bound by the class action judgment. 5 MOORE'S FEDERAL PRACTICE § 23.25[1]. Adequacy of representation is tied to both commonality and typicality. *Amchem*, 117 S.Ct. at 2251 n.20. The adequacy requirement of Rule 23(a)(4) applies both to the class representative and the representative's counsel. *In re Asbestos Litigation*, 90 F.3d 963, 977 (5th Cir. 1996). First, the class representative must not have interests adverse to the class. Courts consider whether the named representative shares common interests with other class members; however, the interests of the representative and the other members need not be identical. 5 MOORE'S FEDERAL PRACTICE § 23.25[4][b]. The Court considers whether the named representative will "vigorously prosecute" the interests of the class through the class counsel. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Second, class counsel must be qualified, experienced, and generally able to conduct the litigation. 5 MOORE'S FEDERAL PRACTICE § 23.25[5][a]. In assessing the adequacy of class counsel, the court may consider the counsel's past record in other litigation, experience, and the particular expertise of the counsel. 5 MOORE'S FEDERAL PRACTICE § 23.25[5][b][ii]; *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

In this case, Defendants again note opt-in Plaintiff Woods' prior conviction for fraud and termination for cause and assert that Woods' history with Defendants presents a credibility hurdle for the class. (Instrument No. 80 at 26-27). Second, Defendants assert that Plaintiff's counsel necessarily faces a conflict of interest from representing a class consisting of both former and current employees of North Cypress. (Instrument No. 80 at 27-28). However, the conflict issue goes to commonality and typicality and should not be part of the Court's consideration of

counsel's litigation ability or experience. *See* 5 MOORE'S FEDERAL PRACTICE § 23.25[5][b][ii]; *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, the Court finds that Lead Plaintiff Willis and the Mabry law firm will fairly and adequately protect the interest of the sub-class of direct patient care employees because Plaintiff does not have interests adverse to the class and counsel has ample class action and employment litigation experience.

A class action may be maintained if it meets the four prerequisites of Rule 23(a) and falls within one of the three categories of Rule 23(b). FED. R. CIV. P. 23(b). Classes under Rule 23(b)(1) and 23(b)(2) usually concern actions requesting equitable relief, while 23(b)(3) classes are normally actions for damage claims. 5 MOORE'S FEDERAL PRACTICE § 23.40[1]. In this case, Plaintiff alleges that the action falls into the third category. A class may be maintained under Rule 23(b)(3) if the court finds that: 1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and 2) "the class action is superior to other available methods" for adjudicating the dispute. FED. R. CIV. P. 23(b)(3). The predominance and superiority inquiries are unique to Rule 23(b)(3) class actions. 5 MOORE'S FEDERAL PRACTICE § 23.44. The rule also states that in assessing certification the court should consider the interests of the class members in bringing individual actions; the extent and nature of any pending litigation by or against members of the class; the desirability of concentrating litigation of the claims in the particular forum; and difficulties in the management of the class action. FED. R. CIV. P. 23(b)(3).

## F.

Rule 23(b)(3) first requires that common questions of law or fact predominate over questions affecting only individual members. FED. R. CIV. P. 23(b)(3). One factor that the

14

district court must take into account in assessing predominance is whether the issue comprises a significant part of the underlying individual action of the named plaintiff. *Jenkins v. Raymark Indus.*, 782 F.2d 468, 470 (5th Cir. 1986). The Fifth Circuit in *Castano v. American Tobacco Co.* reversed and remanded a district court ruling for failure to analyze the predominance issue. 84 F.3d 734, 740 (5th Cir. 1996). The Fifth Circuit held that the district court should have considered how the variations in state law affected predominance. *Id.* "In a multistate class action, variations in state law may swamp any common issues and defeat predominance." *Id.* The court went on to note that the district court must identify which substantive law controls the suit before making a predominance determination when the action is multistate. *Id.* In this case, the events at issue took place exclusively in the state of Texas at the North Cypress facility in Cypress, Texas, Plaintiff Willis is a citizen of Texas, and all Defendants conducted continuous and systematic activities in Texas. Therefore, this Court should find that there is no applicable variation in state law to affect predominance in this case. According, the Court should find that the common question to the class predominate over individual issues of damages.

Rule 23(b)(3) also requires that the class action be the superior method of adjudication. FED. R. CIV. P. 23(b)(3). Courts assess superiority by comparing the efficiency and fairness of all available methods of adjudication, such as individual actions, consolidation, intervention, and joinder. 5 MOORE'S FEDERAL PRACTICE § 23.48[2][a,c]. In *Castano*, the Fifth Circuit recognized a number of factors to consider in determining whether a class action is superior to individual lawsuits. 84 F.3d 734, 740 (5th Cir. 1996).

First, the Court should consider the size of the class – a class action involving a large class is more likely to consume fewer judicial resources and prevent repetitious litigation of the same issues in several courts. In this case, Plaintiff has provided the Court with an estimate of

700 potential members in the direct-care sub-class and 1500 in the main class. Second, a court should assess any other related litigation to determine superiority, and whether any similar class actions are pending or have been settled. 5 MOORE'S FEDERAL PRACTICE § 23.49[3]. In this case, neither party has submitted evidence of or alleged any other similar or pending litigation against the Defendants. *Castano*, 84 F.3d at 748 n.25 ("the lack of individual suits may indicate that there is no 'judicial crisis' that requires certification of a class action); 5 MOORE'S FEDERAL PRACTICE § 23.49[3]. Third, under Rule 23(b)(3)(C), the court may consider the desirability of "concentrating the litigation to the claims in the particular forum." FED. R. CIV. P. 23(b)(3)(C). The desirability determination incorporates criteria used in making change of venue determinations: the accessibility of witnesses and evidence, the burden on the parties, and the existence of a more appropriate forum. 5 MOORE'S FEDERAL PRACTICE § 23.49[4]. In this case, because all claims and relevant events arise in Cypress, Texas, the Court should find that the present forum is the most appropriate for this litigation.

Finally, under Rule 23(b)(3)(D), the court may consider the "difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b)(3)(D). Mere speculation as to unmanageability is not enough to defeat certification; there must be concrete evidence of actual problems, such as whether superior methods of adjudication are available. 5 MOORE'S FEDERAL PRACTICE § 23.49[5][a]. Factors courts have considered relevant in assessing manageability include the difficulty and expense of communicating with members of the class, including notice provision; the size of the class; geographic dispersion of the class; inclusion of pendent state claims by members in different states; and difficulty in calculating damages. 5 MOORE'S FEDERAL PRACTICE § 23.49[5][b]. In this case, Defendants only note the difficulty in calculating individual damages as a factor against manageability and urges the Court to deny

certification. However, the main legal issues in this case can be determined on a representative basis and individual questions with respect to damages do not defeat class action treatment. *See In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001). Therefore, this Court finds that the difficulties likely to be encountered in managing this case as a class action do not rise to the level of making individual lawsuits a superior method of adjudication.

## III.

### A.

The FLSA requires both that covered employers pay each employee a minimum wage set by the Act, 29 U.S.C. § 206(a), and that covered employers compensate nonexempt employees at an overtime rate for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216 (b) of the FLSA provides that an employee may bring an action against their employers for violation of the hour and wage provisions mentioned above. *See* 29 U.S.C. § 216. Section 216 further provides an aggrieved employee may bring suit against his employer on "behalf of himself . . . and other employees similarly situated. [However], no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought" 29 U.S.C. § 216(b). Section 216(b) thereby establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). District courts have discretion in deciding whether to order notice to potential plaintiffs. *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010).

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step approach in *Lusardi*, which imposes different and less stringent requirements than a Rule 23 class action, and the *Shushan* approach, which imposes the requirements of a Rule 23 class action. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo.1990). In *Mooney*, 54 F.3d. at 1216, the Fifth Circuit found it unnecessary to determine which method is most appropriate. Since *Mooney*, however, the Fifth Circuit has acknowledged the inapplicability of Rule 23 to a § 216(b) action in at least one context, holding that the interlocutory appeal provisions of Rule 23(f) do not apply in a § 216(b) action because a "216(b) FLSA action is not a Rule 23 class action." *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 (5th Cir. 2005).

Most courts use the "two-step ad hoc approach" in *Lusardi* as the preferred method for the similarly-situated analysis rather than Rule 23 requirements. *See Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *1 (S.D. Tex. May 2, 2008) ("The prevailing analysis used by federal courts . . . is the two-stage test set forth in *Lusardi*."); *Treme v. HKA Enters., Inc.*, No. 07-1134, 2008 WL 941777, at *2 (W.D. La. Apr.7, 2008) ("[A] review of the district court cases considering certification of an FLSA collective action reveals that a majority of courts in this circuit have favored the two-stage *Lusardi* approach.") (collecting cases); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ( "[T]he requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23.").

The first stage of the *Lusardi* analysis is the "notice stage," in which the district court decides whether to issue notice to potential class members. *Mooney*, 54 F.3d at 1213-14.

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Id.* at 1213. The court's decision in this first stage is often based only on the pleadings and affidavits that have been submitted. *Id.* at 1213-14. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id.* at 1214. Although lenient, this standard requires a factual basis for allegations that potential members "were together the victims of a single decision, policy, or plan." *Id.* at 1214. At this first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. Notice does not issue unless the court conditionally certifies the case as a collective action. *See Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1086 (S.D. Iowa 2007). The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See Mooney*, 54 F.3d at 1214; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual

determination as to whether there are similarly situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney*, 54 F.3d at 1214. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England*, 370 F. Supp. 2d at 508.

## B.

This case is currently at the notice stage. Therefore, the Court applies the first-step of the *Lusardi* analysis to determine whether the Plaintiff has met the requirements for class certification under the FLSA. At the notice-stage, the Plaintiff must show that: (a) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (b) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (c) that those individuals want to opt-in to the lawsuit. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008); *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642 (S.D. Tex. 2010); *Maynor v. Dow Chem. Co.*, No. CIV. A. G-07-0504, 2008 WL 2220394 (S.D. Tex. May 28, 2008); *Prater v. Commerce Equities Mgmt. Co.*, No. CIV.A. H-07-2349, 2007 WL 4146714, at *2 (S.D. Tex. Nov. 19, 2007). "Similarly situated does not mean identically situated. Rather, an FLSA class determination is appropriate when there is a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Tolentino*, 716 F. Supp. 2d at 651 (quoting *Helmerich and Payne Int'l Drilling Co.*, Civil Action No. 92-0043, 1992 U.S. Dist. LEXIS 5367, *4-5 (E.D. La. April 16, 1992)). Before authorizing notice, courts typically require plaintiffs to provide some factual

support for the allegations of classwide discrimination. *Prater* 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007) (citations omitted).

## 1.

Under the *Lusardi* notice-stage analysis, Plaintiff must first show that there is a reasonable basis for crediting the assertion that aggrieved individuals exists. *See, e.g., Tolentino*, 716 F. Supp. 2d at 647. At this step, "plaintiff need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 917-17 (S.D. Tex. 2010). Often the plaintiff will make this showing through the use of affidavits and the allegations contained in the Complaint. *See Mooney, 54 F.3d* at 1213-14 (noting that at the notice stage a court will customarily make a decision "based only on the pleadings and any affidavits which have been submitted").

In this case, Plaintiff has provided affidavits wherein she and other opt-in Plaintiffs declared that Defendants failed to pay employees statutorily mandated overtime pay for work performed in excess of the forty-hour work week. *See* (Instrument No. 62-1 at 6-11, 23-29, 32-36). These affidavits further declare that Plaintiff and other class members have discovered other coworkers who allege similar underpayment by Defendants. *See* (Instrument No. 62-1 at 23-29, 32-36). Finally, Plaintiff certified that 23 other individuals have opted-in to the action since she filed suit. *See* (Instrument No. 62 at 19). Based on the foregoing, the Court concludes that Plaintiff has demonstrated that a reasonable basis exists for her assertion that there are other aggrieved employees. *See, e.g., Tolentino*, 716 F. Supp. 2d at 649; *Prater v. Commerce Equities Mgmt. Co.*, 2007 U.S. Dist. LEXIS 85338, at *13-15 (S.D. Tex. Nov. 19, 2007).

## 2.

After Plaintiff has established that there is a reasonable basis for the assertion that other aggrieved employees exist, Plaintiff must then demonstrate a reasonable basis for the allegation that the aggrieved individuals are similarly situated. *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007); *see also Tolentino*, 716 F. Supp. 2d at 647; *Maynor v. Dow Chem. Co.*, 2008 U.S. Dist. LEXIS 42488, at *17. In order to meet her burden, Plaintiff must demonstrate that the other aggrieved employees are similarly situated to the named plaintiffs with respect to their job requirements and payment practice. *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462 (S.D. Tex. 2012); *Tolentino*, 716 F. Supp. 2d at 650. While Plaintiff need not show identical duties and working conditions across the entire group, *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008), "if the job duties among putative class members vary significantly, then class certification should be denied." *Harris v. Fee Transp. Servs.*, No. Civ.A.3:05CV0077-P, 2006 WL 1994586, at *5 (N.D.Tex. May 15, 2006) (noting the "significant" differences between the job duties of potential plaintiffs); *Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2007 WL 772756, at *9 (S.D.Tex. Mar.12, 2007) (noting that plaintiffs are not similarly situated if their job duties vary "substantially"); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. CIV.A. H-08-1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008). Evidence of similar job duties and a single policy which violates the FLSA is sufficient to find putative class members similarly situated. *Bernal v. Vankar Enters., Inc.*, No. SA-07-CA-695-XR, 2008 WL 791963, at *4 (W.D. Tex. Mar. 24, 2008); *Bursell v. Tommy's Seafood Steakhouse*, No. H-06-0386, 2006 WL 3227334, at *1 (N.D. Tex. Nov. 3, 2006). The class representative "must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 824-25

(N.D. Tex. 2008). Although Plaintiff bears the burden of proof to make this factual-nexus showing, this is a "fairly lenient standard" because the Court decides whether to conditionally certify "based only on the pleadings and any affidavits which have been submitted." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 508 (M.D. La. 2005).

In this case, the parties do not dispute that Plaintiff was a direct patient care employee and that Defendants designated her as a non-exempt hourly-wage worker. Plaintiff seeks to represent other hourly employees who were entitled to but did not receive overtime wages, claiming that she is similarly situated to the class members because they suffered the same injury as a result of Defendants' practices. (Instrument No. 62 at 16-17). In response, Defendants claim that Plaintiff is not similarly situated because various class members had different job titles, types of shifts, types of job duties, and were hired on different terms. Additionally, some class members received overtime pay and other obtained cancellations of their automatic meal break deductions. (Instrument No. 80 at 16-21). Defendants assert that not all class members were subject to the same compensation scheme that Plaintiff alleges to violate the FLSA. However, this Court is not authorized to consider the merits of the underlying case for the purposes of ruling on Plaintiff's motion for conditional class certification.

In this case, Plaintiff does not assert that all class members performed the same duties and does not deny Defendants' assertion that class members had widely diverse job titles and performed different types of work. Accordingly, although there is a sufficient basis in the record to find a common policy, Plaintiff has not established that all the aggrieved individuals in the FLSA main class are similarly situated. *See e.g. McKnight*, 756 F. Supp. 2d at 804. Only individuals in Plaintiff's sub-class are direct patient care staff, and similarly situated in their job responsibilities. In *Mooney*, the Fifth Circuit denied certification where some class members

"worked in a different division of the company and held a distinct job title requiring different job skills," and the Court also denied certification because the plaintiffs differed "significantly in employment characteristics such as job tenure (varying from 1 to 34 years), employment history, salary grade, qualifications, and education." *Mooney v. Aramco Servs. Co.,* 54 F.3d at 1214-15. Therefore, this Court finds that Plaintiff is similarly situated to potential FLSA sub-class members, but that Plaintiff is not similarly situated to potential FLSA main class members.

**3.**

The third and final inquiry during the notice stage is whether the evidence shows that other aggrieved employees would want to join the class. *Tolentino,* 716 F. Supp. 2d at 647; *McKnight,* 756 F. Supp. 2d at 805. Here, "plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit." *Tolentino,* 716 F. Supp. 2d at 647; *McKnight,* 756 F. Supp. 2d at 805.

Presently, two additional aggrieved plaintiffs have filed affidavits with the Court expressing their intent to opt-in to the lawsuit. *See* (Instrument No. 62-1 at 23-29, 32-36). Plaintiff also certified that 23 other individuals have opted-in to the action since she filed suit. *See* (Instrument No. 62 at 19). Because this litigation has already attracted 23 additional plaintiffs in this preliminary stage, the Court should conclude that the Plaintiff has produced sufficient evidence to show that other aggrieved want to join the collective action. *See Prater,* 2007 U.S. Dist. LEXIS 85338, at *25-26 (even in the absence of affidavits, the presence of three plaintiffs in lawsuit showed interest in the litigation); *see also McKnight,* 756 F. Supp. 2d at 805 (presence of six plaintiffs sufficient to demonstrate interest in the litigation).

Thus, Plaintiff has shown that notice of a collective-action suit is warranted. This Court finds that Plaintiff is similarly situated to potential FLSA sub-class members, but that Plaintiff is

not similarly situated to potential FLSA main class members. Accordingly, the Plaintiff's Motion to Conditionally Certify Collective Action and Authorize Notice and for Limited Discovery (Instrument No. 62) is **DENIED in part** as to the main class and **GRANTED in part** as to the sub-class consisting of individuals with the same job responsibilities as Plaintiff.

## C.

The Supreme Court has recognized that a trial court has a "substantial interest in communications that are mailed for single actions involving multiple parties." *Hoffmann-La Roche*, 493 U.S. 165, 171 (1989). Accordingly, it is well within the purview of the Court to monitor the preparation and distribution of a notice sent to putative class members, and to "ensure that it is timely, accurate, and informative." *Id.* at 172. In exercising its discretionary authority over the notice-giving process, however, "courts must be scrupulous to respect judicial neutrality . . . and must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. Courts have seen fit to modify, or even dictate, the form and content of a notice sent to putative class members. *See Solis v. Hotels.com Texas Inc.*, No. 3-03-CV-618-L, 2003 WL 22272008, at *2-4 (N.D. Tex. Oct. 1, 2003).

Defendants object to the Notice's title of "UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS" and ending of "THIS IS A COURT APPROVED NOTICE. ***THIS IS NOT AN ADVERTISEMENT FROM A LAWYER***." Defendants argue that the Notice is highly suggestive of the Court's approval of Plaintiff's legal position. (Instrument No. 83 at 31). Defendants allege that the title and disclaimers are highly suggestive of the Court's approval of Plaintiff's legal position and implies "judicial sponsorship of the notice." *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982). Defendants allege that the Notice's repeated references to "the Court" are likely to lead a layman reader to

conclude that the Court approves or sanctions the lawsuit. The Supreme Court has held that "courts must be scrupulous to respect judicial neutrality . . . and must take care to avoid even the appearance of judicial endorsement of the merits of the action," *Hoffmann-La Roche*, 493 U.S. at 174. However, the Notice in this case only factually mentions once at the bottom of the page that the document itself is court-approved, and does not make unnecessary or misleading references to imply that the Court favors Plaintiff's legal position. As such, the Court finds that the title and ending disclaimer are not prejudicial or improper.

As noted previously, Plaintiff must amend the proposed Notice to limit it to "former and current hourly direct patient care employees" and not all former and current hourly employees of North Cypress. (Instrument No. 62-1 at 90-93). Per the Court's findings above, Plaintiff's motion for conditional certification is proper only as to the sub-class of direct patient care employees, rather than all hourly employees at North Cypress.

Defendants also object repeatedly to the Notice's content for allegedly misleading prospective layman members into believing that they will automatically lose a right by not joining the class action, for superfluous language discussing the merits of the claims, for implying that all plaintiffs will receive compensation by mere participation in the suit, and for failing to inform potential plaintiffs that they may seek representation of their own. (Instrument No. 83 at 31). The proposed Notice begins with a subject line which reads: "RE: The right of current and former hourly employees employed by North Cypress Medical Center to join a lawsuit seeking unpaid wages." Defendants assert that the subject line is misleading because it implies that putative class members automatically lose a right by not joining. Defendants also object to the paragraph headings titled "Why Are You Getting This Notice?" and "What Is This Lawsuit About?" because these sections discuss the merits of the case and are superfluous.

However, the FLSA directs the potential class notice to include "a description of the issues accepted as part of the class complaint" and the Court does not find that any misleading statements exist in the content of the notice. 12 C.F.R. § 268.204. Therefore, Plaintiff's proposed notice is not improper as to content. Defendants also object to Plaintiff's request to issue notice twice – once by mail and once by email. (Instrument No. 83 at 33). The Court agrees that mailing notice once is sufficient without additional email notice, in the absence of special circumstances. Plaintiff has not cited to any case authority for her claim that double mailings are consistent with established practices under the FLSA. In fact, there is no case authority in the Fifth Circuit permitting double notices by mail and email. Therefore, Plaintiff's request to issue notices both by mail and email is **DENIED**. Plaintiffs must issue notice by physical mail only.

Finally, Plaintiff requests discovery from Defendants including names, last known addresses (personal and work), all phone numbers (phone, work, cell, and etc.), driver's license numbers, social security numbers, and dates of employment for all class members employed at any time during the relevant period. Defendants object to these requests on the grounds of substantial privacy concerns with regards to email addresses, driver's license numbers, and social security numbers. In light of the privacy concerns of the putative class members, the Court finds that Plaintiffs' requests for cell phone numbers, e-mail address, and social security numbers are unreasonable. However, home phone numbers may be used as reverse directory checks, and the Court finds that in the event that mail is returned undelivered, Plaintiffs should be allowed access to home phone numbers for the sole purpose of performing reverse directory checks. In the event that the prospective class members do not have a home telephone number, Plaintiff should be allowed to access cell phone numbers for any potential class member whose mail is returned. At the outset, Plaintiffs are only entitled to names, addresses, and dates of employment regarding

potential class members. Therefore, Plaintiffs' request must be limited to the names, addresses, and dates of employment of putative plaintiffs.

Accordingly, Plaintiff's request for notice is **GRANTED** subject to Plaintiffs' revision of the notice and consent forms in accordance with the Court's order, and **DENIED** as to Plaintiff's request for cell phone numbers, driver's license numbers, and social security numbers for all putative class members.

## III.

IT IS HEREBY ORDERED THAT Plaintiffs' Motion for Conditional Class Certification and Notice (**Instrument No. 62**) is **GRANTED in part** as to the sub-class **and DENIED in part** as to the main class, and Plaintiff's Motion for Rule 23 Class Certification (**Instrument No. 65**) is **GRANTED in part** as to the sub-class **and DENIED in part** as to the main class.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 12th day of December, 2014, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**