## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JARA NEAL WILLIS, Individually** | § | |
| **and on Behalf of All Others Similarly** | § | |
| **Situated,** | § | |
|     **PLAINTIFF,** | § | |
| | § | **C.A. NO. 4:13-cv-03375** |
| **V.** | § | |
| | § | |
| **ROBERT A. BEHAR, Individually,** | § | |
| **and NORTH CYPRESS MEDICAL** | § | |
| **CENTER OPERATING COMPANY** | § | |
| **GP, L.L.C.** | § | |
|     **DEFENDANTS.** | § | |

## DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S AMENDED EXPERT REPORT OF DAVID BRESHEARS AND *DAUBERT* CHALLENGE

### TO THE HONORABLE JUDGES OF SAID COURT

COME NOW, the Defendants (collectively, "Defendants" or "NCMC") and show the following:

### SCHEDULING ORDERS

1.     The Court's original Scheduling Order required the Plaintiff to "designate expert witnesses in writing, listing the qualifications of each expert, the opinions the expert will present, and the bases for the opinions as required under Federal Rule of Civil Procedure 26(a)(2)" on or before January 5, 2015.  (Dkt. 37, Ex. "A")

2.     Pursuant to the Scheduling Order (Dkt. 37), the Plaintiffs presented the report of David Breshears on January 5, 2015.  The report did not provide the damages allegedly sustained by the Plaintiffs.  (Dkt. 130-3, Ex. "B")

3.     This case was filed on November 14, 2013.  (Dkt. 1)  By January 5, 2015, NCMC had produced 59,634 pages of documents including all records requested by the Plaintiffs with

regard to the potential class members and payroll information.  As this Court noted before, the Plaintiff never requested the payroll information in electronic format.  (Dkt. 206, p. 14, ll. 2-7).

    4.    At no time did the Plaintiffs ever ask for an extension of the expert cut-off date of January 5, 2015.

    5.    Thereafter, on February 5, 2015, at the request of the Plaintiffs, the Court entered its Amended Scheduling Order.  (Dkt. 168, Ex. "C")  In response to the Plaintiffs' request, the dates for the Motions for Class De-certification were reset together with motions deadline and the trial setting.  (*Id.*)  At no time did the Plaintiffs ever ask to extend from January 5, 2015, the cut-off date for the Plaintiffs' expert witness reports.

    6.    On August 25, 2015, Plaintiffs filed an Amended Expert Report of David Breshears.  (Dkt. 223, Ex. "D")  This Amended Expert Report contained completely new opinions with regard to rounding off time, missed meal breaks, overtime pay and "possible" damages pertaining to rounding time, overtime pay and missed meal breaks, none of which were included in Mr. Breshears' initial report.  (Compare Ex. "B" to Ex. "D")

    7.    The only agreement between Plaintiffs' counsel and NCMC's counsel was that Mr. Breshears' deposition could be taken after the discovery cut-off date of August 1, 2015.  (Ex. "E") Breshears' deposition has not yet been taken in part because: (a) Plaintiff's counsel's insistence that the deposition be taken in San Francisco, California, even though he filed this case in Houston, Texas; and, (b) during September and October, 2015, undersigned counsel has been involved in both pre-trial procedures and trial in Judge Hoyt's court.

    8.    The Plaintiffs' Expert Report of David Breshears was filed many months after the discovery cut-off date and no extended date was provided by the Court for any such additional reports.

9.     Based upon the foregoing, the Plaintiffs' Expert Report of David Breshears dated August 25, 2015 (Dkt. 223-1, Ex. "D") should be stricken.

## IN THE ALTERNATIVE, BRESHEARS' REPORT SHOULD ALSO BE STRICKEN ON A SUBSTANTIVE BASIS/*DAUBERT* CHALLENGE

10.     NCMC seeks to exclude the proposed expert testimony, second report and "opinions" of Plaintiff's designated expert Breshears.  This evidence should be excluded because Breshears' opinions and testimony (a) will not assist the Court in understanding the evidence or determining any of the relevant facts as they pertain simply to "possible" damages; (b) lack the necessary probative value to be admissible as expert testimony; and, (c) constitute improper calculations of alleged damages which are irrelevant and inadmissible as a matter of law.

11.     In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), the Supreme Court re-asserted that Rule 702, Fed. R. Evid., requires scientific expert testimony to be reliable and relevant.  Faced with a proffer of expert testimony, the trial judge must determine at the outset whether the expert is proposing to testify to (a) scientific knowledge that (b) will assist the trier of fact to understand or determine a fact in issue. This entails the preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. *Id.* at 592.

12.     The *Daubert* Court also provided factors for determining whether expert testimony is relevant and reliable, and thus admissible.  *Id.* at 591-594.  These non-exclusive factors are:

(a)     the testability of the expert's theory or technique;

(b)     whether the theory or technique had been subject to peer review and publication;

(c)     the known potential rate of error; and,

(d)      whether the methodology was generally accepted by the scientific community.

*Id.* at 592-94. The *Daubert* Court determined that even if a trial court finds expert testimony to be reliable, the testimony must also be relevant. It must *"assist the trier of fact to understand the evidence or to determine a fact in issue." Id.* at 579. Thus, even if the expert offers testimony based on methodologies which meet the four criteria for reliability, the testimony must be *"sufficiently tied"* to the issues in question and the facts of the case. *Id.* at 591.

13.      Six years after *Daubert*, in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167 (1999), the Court expanded the *Daubert* principle from purely scientific testimony to *all* types of expert testimony. In clarifying the trial judge's gatekeeping function, the Court held:

> "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

The "level of intellectual rigor" refers to the methodology the expert would use in his every day practice to reach a conclusion in his work outside the courtroom. The trial court, as the gatekeeper, must determine whether the specific factors enumerated in *Daubert* are reasonable measures of reliability in a particular case. *Kumho Tire,* 526 U.S. at 152-53.

14.      Plaintiff's expert witness, David Breshears' second report issued on August 25, 2015, simply claims possible and "potential" damages, presents possible claims and claims for "Call-Back" with unspecified damages, as well as claims in addition to those certified by this Court on December 12, 2014. (Dkt. 123) In this new report, Plaintiff's expert witness makes additional possible and "potential" claims for the class members pertaining to (a) improperly calculated regular rates of pay in the range of $14,491 to $20,439 (2-years v. 3-years); (b) clock-

in and clock-out claims which round in the employers' favor in the range of $25,571 to $41,708 (2-years v. 3-years); and, (c) "Call-Back" hours in an "unspecified" amount. (Dkt. 223-1, p. 2)

15.     First, expert witness opinions cannot be based on mere possibilities and unspecified amounts else their opinions to the finder of fact are useless and inadmissible. *Hammond v. Coleman Co., Inc.*, 61 F.Supp 2d 533, 538-539 (S.D. Miss. 1991), aff'd 209 F.3d 718 (5th Cir. 2010)).   In Breshears' report dated August 25, 2015 (Dkt. 223-1, Ex. "D"), Breshears has only concluded that there are "potential unpaid wages," there is an "appearance" of improper calculations of regular rate of pay; there are "potential unpaid differentials" factored into his "analyses of potential damages;" there are "potential unpaid wages" with regard to "rounding" and, "potential unpaid wages" with regard to missed meal breaks (*Id,*, ¶ 29, p. 5; ¶ 36, p. 6; ¶ 39, p. 7; ¶¶ 44-45, p. 8; and, ¶ 51, p. 9).   Breshears also included "Call-Back" hours in an unspecified amount.   (Dkt. 223-1, p. 2, fn. 2; Ex. "D")   The law requires that the expert make exact calculations based upon "probability" or "reasonable certainty."   *See In Re Vioxx Products Liability Litigation*, 401 F.Supp. 2d 565, 573 (E.D. La. 2005.

16.     Second, these additional damages are contrary to the Court's § 216(b) Conditional and Rule 23 Certifications of "direct patient employees who worked 40 hours or more per week [or less than 40 hours per week] and *who were not paid for missed or interrupted meal breaks during the 3-year period*." (Dkt 123)   The Court only certified claims wherein the employees "*were not paid for missed or interrupted meal breaks*" during the periods in question.   The Court did not certify regular rates of pay, rounding claims and "Call-Back" claims.

17.     Third, Breshears assumed that every single class member experienced a missed or interrupted meal break every single day that he/she worked a shift of 6 or more consecutive hours notwithstanding the fact that 76 of the conditional class members received 1,839 CDs

during the 3-year period in question and 854 of the potential Rule 23 members received 21,316

CDs during the period in question indicating that (a) they understood the policy and (b) where

paid for missed or interrupted meal breaks.  (Dkt. 229, Exhibit "1").  "An expert's opinion that is

speculative or conclusory or assumes facts contrary to evidence in the record is legally

insufficient." *Thompson & Knight LLP v. Patriot Exploration, LLC*, 444 S.W.3d 157, 162

(Tex.App.–Dallas 2014, no pet.); *Arkoma Basin Exploration Co. v. FMF Associates 1990–A.

Ltd.*, 249 S.W.3d 380, 388–89 (Tex.2008).  Breshears ignores the evidence and makes an

assumption that is contrary to the evidence, *i.e.*, that all class members during every single day

that they worked a shift of 6 or more consecutive hours missed or had an interrupted meal break.

This is baseless speculation unsupported by the record that every class member missed his/her

meal breaks or had them interrupted everyday while employed at NCMC.  These assumptions

are without any evidentiary basis and ultimately result in an unreliable report that will not assist

the trier of fact.  *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.1994) (noting that the opinion of

an expert is meaningless unless there is adequate record evidence to support the expert's

assumptions). Breshears' second report should also be stricken on the basis that it repeatedly

calls for compensation to employees that have already been properly compensated for the work

performed (*i.e.*, the submitted CDs) and includes damages for periods of time that the class

members had no right to additional compensation (*i.e.*, periods of time that the employee was not

working during meal breaks).

18.     Moreover, expert testimony fails if there is "simply too great an analytical gap

between the data and the opinion proffered." *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex.2013)

A court should not " ignore fatal gaps in an expert's analysis or assertions." (*Id.*)  In *Sigur v

Emerson Process Management*, 492 F.Supp.2d 565 (M.D.La.2007), the court dismissed the

plaintiff's damages expert because the expert's opinions were based on self-serving and unsubstantiated statements made by the plaintiff. (*Id.*) at 570. Specifically, the expert's opinions were based upon the plaintiff's own record of declining sales and evidence that other market factors, for example natural disasters, did not cause a material decline in those sales in order to establish that the actions of the defendant were the cause of the decline. *Id.* In response, the defendant's experts established that the decline was due, at least in part, to the cyclical nature of the business by utilizing a myriad of information and evidence, including non-party customer depositions and market analysis. *Id.* The court granted the defendant's motion to exclude the plaintiff's expert in finding that the expert failed to consider other relevant evidence and independent market factors in reaching his conclusions. *Id.* at 271.

19.     Here, Breshears has neglected to incorporate the evidence produced in regard to the class members' submissions of 1,839 CDs for the conditional class and 21,316 CDs submitted by the potential Rule 23 class members and did not consider the actual dates and times the class members allegedly completely or partially missed meal breaks. The expert witness in *Sigur*, at least, considered evidence as to amount of the plaintiff's declining sales and also considered the negligible effects of natural disasters would have on their business in order to come to the conclusion that the defendants were the cause of the plaintiff's damages. *Id.* at 270. Nevertheless, the *Sigur* court found that the partial utilization of actual figures already in evidence and an actual analysis of market factors was insufficient because the expert neglected to consider other relevant factors in forming his expert opinion. Here, Breshears' made no effort to even utilize the evidence produced in this case by analyzing records showing the class members' actual submission of CDs. His second report is further tainted by the improper assumption that every class member was required to work during his/her meal breaks every single day of their

employment which is not supported by the evidence. That is how Breshears gets to the $423,134 to $687,250 range of "potential" damages in his report. (Ex. "D," p. 2) Otherwise, his only other "potential" damages for the entire class for alleged "rounding" and "regular rate of pay" are only in the combined range of $40,062 to $62,147. (*Id.*) He has failed to include any deductions accounting for the facts in evidence. Breshears simply made a series of assumptions that are not supported by the record and thereafter applied simple arithmetic calculations based upon those incorrect assumptions to come to his expert opinion.

20.     Based upon the following, Breshears second expert report should be stricken.

**WHEREFORE, PREMISES CONSIDERED,** Defendants pray that they be granted the relief requested hereinabove and for such other and further relief to which they may show themselves justly entitled.

Respectfully Submitted,

By:___ */s/ J. Douglas Sutter*_____
        J. Douglas Sutter
        Federal Bar No. 3791
        State Bar No. 19525500

ATTORNEY FOR DEFENDANTS ROBERT A. BEHAR, INDIVIDUALLY, NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, L.L.C. AND NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY, LTD.

**OF COUNSEL:**

**KELLY, SUTTER & KENDRICK**
3050 Post Oak Blvd., Suite 200
Houston, Texas 77056-6570
(713) 595-6000 – Telephone
(713) 595-6001 – Facsimile
DSutter@ksklawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2015, a true and correct copy of the foregoing document was provided to opposing counsel as indicated below:

Alex Mabry
THE MABRY LAW FIRM, PLLC
7155 Old Katy Road, Suite N235
Houston, Texas  77024

*Via Email:  amabry@mabrylaw.com*
  and *ECF*

Galvin B. Kennedy
KENNEDY HODGES, LLP
711 West Alabama St.
Houston, Texas 77006

*Via Email:  gkennedy@kennedyhodges.com*
and *ECF*

*/s/ J. Douglas Sutter*
J. Douglas Sutter