# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

CIVIL ACTION NO. 4:13-cv-03375

JARA NEAL WILLIS, Individually and on Behalf of All Others Similarly Situated

v.

ROBERT A. BEHAR, Individually; and NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, L.L.C.

UPDATED EXPERT REPORT OF DAVID BRESHEARS, CPA/CFF

**Exhibit "D"**

## I. Introduction

1. The opinions expressed in this report are my present opinions subject to the following reservations. Amendments or additions to this report may be required as a result of developments prior to or at trial, including, but not limited to, the discovery of new evidence, expert discovery, and the testimony of any other witness in deposition or at trial.
2. I anticipate using at trial selected exhibits attached to this report, documents reviewed in connection with their preparation, enhanced graphic versions of selected exhibits included in this report (i.e., redrafted to improve their presentation quality) and additional graphics illustrating concepts described in this report.

## II. Assignment

3. I have been retained by counsel for the Plaintiff and all others similarly situated in the matter of Jara Neal Willis v. Robert A. Behar and North Cypress Medical Center Operating Company GP, L.L.C. ("Defendants"). Defendants operate a medical facility and employ hourly employees, some of whom are engaged in direct patient care. Plaintiff and all others similarly situated, as hourly employees, have alleged that they were not properly compensated for all hours worked and for all overtime hours worked as (1) their regular rates of pay were improperly calculated, (2) they were advised to clock in and clock out during times which round in Defendants' favor, and (3) they routinely worked during their unpaid meal breaks. I have been asked to review time and payroll records as they relate to these class-wide allegations.
4. Given my receipt of additional data on FLSA opt-ins produced by Defendants in usable format, I am updating my report accordingly to proffer opinions and damage calculations regarding the number of regular hours and overtime hours worked and the related unpaid amount owed; the amount of liquidated damages owed; and the amount of interest owed. As of the date of this report, 200 additional individuals have opted in to the class, for a current class of 201 individuals. It is my understanding that, under the FLSA, the damage period can extend back two or three years from each individual's opt in date.[1] For purposes of this report, I have been asked to assume a three-year statute of limitations.

## III. Summary of Expert Qualifications

5. I am a Certified Public Accountant, licensed in the State of California, and Certified in Financial Forensics. I am currently a partner at Hemming Morse, LLP, CPAs, Forensic and Financial Consultants. My work in the accounting profession includes experience as an auditor and as a consultant. My expert qualifications, including my testimony, are described in **Exhibit A** hereto.
6. I have consulted on and/or testified in over 120 matters involving wage and hour-related disputes, including those arising under the FLSA and the California Labor Code. These matters have involved allegations of unpaid overtime, off-the-clock work, meal and rest break violations, employment misclassification, time shaving, record keeping violations, and

---

[1] For individuals who opted in prior to December 12, 2014, the statute of limitations is based on their opt in date. For individuals who opted in between December 12, 2014 and April 17, 2015, the statute of limitations was tolled back to December 12, 2014. For individuals who opted in after April 17, 2015, the statute of limitations is based on their opt in date plus the additional 126 tolled days.

7. unreimbursed business expenses. In many of these cases, time keeping records were kept and maintained in a Kronos software program, as is the case here.
8. My firm has been compensated for my review and analysis in this matter at my standard hourly rate of $400 per hour. Others have assisted me in my work and my firm has been compensated for their work at their standard hourly rates.

## IV. Summary of Opinions

8. Based on my review of the time and payroll records, including related Earning Dictionary documents detailing Defendants' wage-calculation procedures, as they relate to the class-wide allegations, it appears that Defendants may not have included all remuneration in the calculation of class member's regular rate of pay. In addition, I have noted that Defendants' payroll system includes certain non-work related hours in the computation of the regular rate of pay, which effectively dilutes the employee's regular rate of pay for purposes of computing overtime premiums due.[2]
9. I have currently calculated, within a three year-statute of limitations and a two year-statute of limitations, the following <u>potential damages</u> related to 191 opt in individuals and 160 opt in individuals, respectively:

| Damages Category | 2 Year SOL | 3 Year SOL |
| --- | --- | --- |
| Wages Due re: Regular Rate of Pay | $14,491 | $20,439 |
| Wages Due re: Rounding | 25,571 | 41,708 |
| Wages Due re: Meal Deduction | 423,134 | 687,250 |
| Total Wages Due | $463,196 | $749,397 |

## V. Evidence Considered

10. In undertaking my assignment, I have considered information from a variety of sources, each of which is of a type that is reasonably relied upon by experts in my field. Those sources are identified throughout this report, as well as in **Exhibit B** to this report.
11. Specifically, I have relied on documents that can generally be described as one of the following: (a) Time Detail report; (b) Time Summary report; (c) Payroll History; (d) Earning Dictionary; and (e) Plaintiff's Declaration.

*Time Detail*

12. The electronic Time Detail reports contain, among others, the following information: (a) employee name; (b) date; (c) punch in and out times; (d) exceptions (e.g., cancel deduction); and (e) related rounded hours paid. As such, the Time Detail can be used to determine when an employee clocked in or out and the related rounding effect, as well as

---

[2] Based on Exhibit 4 to the August 11, 2015 deposition of Sheila Stowe, the North Cypress Earnings Dictionary states that Call Back hours are included in both total remuneration ("OT – Exclude $: N[o]") and also included in the computation of actual hours worked ("OT – Exclude HRS: N[o]"). However, it is my understanding that at least one hour of time is paid for Call Back pay that does not represent actual hours worked (deposition of Sheila Stowe, August 11, 2015, page 168). Similarly, the Earning Dictionary and pay records reviewed indicate that Defendants are also including non-work related hours in the calculation of regular rate for certain "36/4" employees, that is, employees working three 12-hour weekend shifts who are compensated for 40 hours of pay for working 36 hours.

Page 2 of 9

13. The electronic Time Detail reports appear to include information from November 8, 2009[3] through May 30, 2015 for 63,438 days attributable to 196 employees[4]. For employees whose Time Detail reports were not provided, no potential damages related to rounding and automatic meal deduction could be calculated.

14. Electronic Time Detail reports were only recently provided for Plaintiff Jara Neal Willis from December 5, 2010 through September 28, 2013 for 423 days. A different version of the Time Detail report for Ms. Willis was previously provided in PDF format[5], which appears to include information from January 3, 2010 through October 5, 2013 for an additional 191 days. I have data entered this Time Detail for Ms. Willis, which contains, among others, the following information: (a) employee name; (b) pay rule; (c) date; (d) apply to description (e.g., bonus, on call, PTO); (e) punch in and out times; (f) punch in and out exceptions [e.g., CD (or cancelled deduction)]; (g) amount (e.g., bonus); and (h) related rounded hours paid.

*Time Summary*

15. The electronic Time Summary reports contain, among others, the following information on a *weekly* basis: (a) employee name, (b) pay code description, (c) amount (e.g., bonus), and (d) related hours paid. As such, the Time Summary can be used to determine which work weeks[6] shift differential pay, bonuses, on call pay, and/or callback pay were earned.

16. The electronic Time Summary reports appear to include information from November 8, 2009 through May 30, 2015 for 15,286 work weeks (or 8,013 pay periods) attributable to 196 employees[7]. For employees whose *weekly* Time Summary reports were not provided, it is not possible to determine which hours and work weeks were subject to shift differential pay, and as such, no potential damages related to the regular rate of pay could be calculated.

*Payroll*

17. The electronic Payroll History reports contain, among others, the following information: (a) employee number and name; (b) check date; (c) pay period end; (d) earnings description; (e) related hours; (f) related rate; and (g) related current amount. The earnings descriptions can be used to determine if earnings and hours relate to compensable time off (e.g., PTO), which should be excluded from the calculation of the regular rate of pay. Although the Payroll History reports show the number of hours paid, it may not reflect the actual number of hours worked.

18. The electronic Payroll History reports appear to include information from December 4, 2011 through May 30, 2015 for 8,080 pay checks attributable to 190 employees[8].

---

[3] Time Detail reports (as well as Time Summary reports) for certain individuals were provided from November 8, 2009 forward. However, the majority of Time Detail reports (as well as Time Summary reports) provided for individuals were from December 4, 2011 forward.

[4] Electronic Time Detail reports were provided for A. Castner and P. Garza, who have since opted out. Electronic Time Detail reports were not provided for seven additional individuals who opted in – L. Hill, K. Money, L. Nillas, N. Raney, Connie Smith, M. Tsi-Tong, and M. Turner.

[5] See NCMC 003335 – NCMC 003433.

[6] It appears that employees were paid biweekly and that the standard work week was Sunday through Saturday.

[7] Electronic Time Summary reports were provided for A. Castner and P. Garza, who have since opted out. Electronic Time Summary reports were not provided for seven additional individuals who opted in – L. Hill, K. Money, L. Nillas, N. Raney, Connie Smith, M. Tsi-Tong, and M. Turner.

[8] Electronic Payroll History reports were provided for A. Castner and P. Garza, who have since opted out. They were also provided for Mary Green identified to me as the same person as "Mary Adams" in Defendants' records. However, it is not clear whether the same person is at issue, as her hours in the Time Summary reports do not match to those in the Payroll History reports. Electronic Payroll History reports were not provided for the Plaintiff Jara Neal Willis or

19. Electronic Payroll History reports were not provided for Plaintiff Jara Neal Willis and seven additional individuals – Paula Kathryn Howard, Teresa Delao Lewis, Carol Spears Pitts, Nikaela Ann Raney, Brittany Ann Denise Sandle, Chunda Lanise Sistrunk, and Connie Juanita Smith - who opted in; Payroll Stubs were provided in PDF format[9], which appears to include information from December 20, 2009 through October 5, 2013 for 172 pay checks. I have data entered these Payroll Stubs, which contains, among others, the following information: (a) employee name; (b) check date; (c) pay period end; (d) earnings description; (e) related hours; and (f) related current amount. The related wage rate can be calculated by dividing the current amount by the hours.
20. For employees whose electronic Payroll History reports or Payroll Stubs were not provided, no potential damages could be calculated, as Time Detail and *weekly* Time Summary reports were also not provided for these employees.[10]
21. The Earning Dictionary appears to identify, among other items, how Defendants treated each category of employee compensation in the calculation of the regular rate for overtime purposes.

## VI. Basis of Opinions

*Regular Rate of Pay Calculation*

22. Plaintiff and all others similarly situated have alleged that Defendants improperly calculated the regular rate of pay for overtime purposes in work weeks in which supplemental compensation, such as shift differential pay, bonus, on call pay, and/or callback pay, was earned. It is my understanding that, according to the FLSA, the regular rate of pay should be calculated as (a) the total remuneration, including supplemental compensation but excluding overtime premiums already paid, in the work week divided by (b) the number of hours worked and paid in the work week.[11]
23. For purposes of this report, I have included as total remuneration amounts with an earnings description of bonus, callback, charge, evening, holiday worked, in-service, night, on call, orientation, overtime, preceptor, red zone, regular, sitter on call, and weekend. Holiday worked and overtime have been included in total pay at the related standard base rate. Amounts with an earnings description of "36/4"[12], bereavement, employment injury, jury duty, paid time off, or retro pay have not been included as total pay.
24. I have included as hours worked those with an earnings description of holiday worked, in-service, orientation, overtime, red zone, and regular. Hours with an earnings description of "36/4"[13], bereavement, callback, charge, evening, jury duty, night, on call, preceptor, paid

---

for twelve additional individuals who opted in – L. Hill, P. Howard, T. Lewis, K. Money, L. Nillas, C. Pitts, N. Raney, B. Sandle, C. Sistrunk, Connie Smith, M. Tsi-Tong, and M. Turner.
[9] See NCMC 003957 – NCMC 004054, within NCMC 045805 – NCMC 045911, and within NCMC 059227 – NCMC 059565.
[10] i.e., L. Hill, K. Money, L. Nillas, N. Raney, Connie Smith, M. Tsi-Tong, and M. Turner. In addition, no damages could be calculated for the majority of the individuals prior to December 4, 2011, as records were not produced for those individuals prior to that date.
[11] The regular rate of pay calculation would also exclude any payments and hours related to compensable time off, such as PTO.
[12] "36/4" earnings amounts have not been included as total pay, as the weekly Time Summary reports do not appear to indicate which work weeks these amounts were earned.
[13] However, based on my review of the payroll records and earnings dictionary, it appears that Defendants have included "36/4" hours as hours worked. As such, the calculation of the regular rate of pay would be understated in those weeks were the employee worked overtime and also was paid for "36/4" earnings.

time off, sitter on call, or weekend have not been included in the number of hours worked, as these codes likely do not represent hours worked.

25. Of the 8,252 (i.e., 8,080 + 172) paychecks in the electronic Payroll History reports and the Payroll Stubs, I could determine the related pay period for 8,052 pay checks. I could not determine the related pay period for 200 off-cycle pay checks, in which the check date and pay period end were the same. Of the 200 off-cycle pay checks, 147 relate to compensable time off which would be excluded from the calculation of the regular rate of pay but 53 relate to other hours paid and/or supplemental compensation which could understate the calculation of the regular rate of pay. Of the 8,052 pay checks for which I could determine the related pay period, 7,815 pay checks are within a three-year statute of limitations.
26. Of the 7,815 pay checks, I could match the hours and bonus paid to those in the related weekly Time Summary reports for 7,475 pay checks. Of the 340 pay checks I could not match the hours and bonus paid, 150 relate to pay periods for which one or both weekly Time Summary reports were not provided.
27. I allocated, by employee, pay period, and earnings description, the total pay amounts between the two work weeks based on each work week's hours per the Time Summary reports as a percentage of the hours per the Payroll History reports. I then calculated, by employee, each work week's regular rate of pay by dividing the allocated total pay by the related number of hours worked.[14]
28. Overtime premiums have been calculated for the related number of overtime hours per the Time Summary reports, by employee and work week, at one-half (0.5) times the applicable regular rate of pay. These overtime premiums were added to the total pay amounts for the amounts that should have been paid, which were then compared, by employee and pay period, to the related amounts paid. Of the 7,815 pay checks, 2,162 have related overtime hours per the Time Summary reports.
29. Potential unpaid wages have been calculated, by employee, for pay periods where the amount that should have been paid was greater than the amount paid. Unpaid wages for certain pay periods have been excluded from my analysis when related retro[15] or adjustment payments were made in following pay periods. <u>Potential unpaid wages, within a three-year statute of limitations, total $20,439. Potential unpaid wages, within a two-year statute of limitations, total $14,491.</u>

*Regular Rate of Pay Calculation Examples*
30. As an example, for the pay period ending February 25, 2012, Ms. King was paid $1,630.35, of which $977.03 relates to 46.75 hours worked in the week ending February 18, 2012 and $653.32 relates to 40 PTO hours in the week ending February 25, 2012. Of the 46.75 hours worked and paid in the week ending February 18, 2012, 39.25 were evening shift differential hours, 6.25 were weekend day shift differential hours, and 1.25 were not shift differential hours.
31. Ms. King's Payroll Stub shows that her base rate was $16.333 per hour, her evening shift differential was paid at $1.00 per hour, and her weekend day shift differential was paid at $1.50 per hour. There was also on call pay of $84.00 and callback pay of $16.33. As such, the straight time pay in the week ending February 18, 2012 was $912.52 [(46.75 × $16.333) + (39.25 × $1.00) + (6.25 × $1.50) + $84.00 + $16.33], and the regular rate of pay was $19.52 per hour ($912.52 / 46.75).

---

[14] The calculation of the regular rate of pay could be understated if there are hours per the Time Summary reports but no related total pay amounts per the Payroll History reports to allocate.
[15] Does not include retro payments made in 2015, which may represent back pay claims.

Page 5 of 9

32. At one-half (0.5) times the regular rate of pay for 6.75 overtime hours (46.75 – 40), the overtime premium pay should be $65.88 (0.5 x $19.52 x 6.75), and the total pay should be $978.40 ($912.52 + $65.88). However, Ms. King was only paid $977.03 in the week ending February 18, 2012, resulting in an underpayment of $1.37 ($978.40 - $977.03).
33. As another example, for the pay period ending September 7, 2013, Ms. Thompson was paid $1,930.74[16], which relates to 47 hours worked in the week ending August 31, 2013 and 38 hours worked in the week ending September 7, 2013. None of the hours worked and paid were shift differential hours.
34. Ms. Thompson's Payroll Stub shows that her base rate was $19.475 per hour. There was also on call pay of $49.00 and bonus of $75.00 for the week ending August 31, 2013 and bonus of $75.00 for the week ending September 7, 2013. As such, the straight time pay in the week ending August 31, 2013 was $1,039.33 [(47 x $19.475) + $49.00 + $75.00], and the regular rate of pay was $22.11 per hour ($1,039.33 / 47). The straight time pay in the week ending September 7, 2013 was $815.05 [(38 x $19.475) + $75.00], and the regular rate of pay was $21.45 per hour ($815.05 / 38).
35. At one-half (0.5) times the regular rate of pay for 7 overtime hours (47 – 40), the overtime premium pay in the week ending August 31, 2013 should be $77.39 (0.5 x $22.11 x 7), and the total pay should be $1,931.77 ($1,039.33 + $815.05 + $77.39). However, Ms. Thompson was only paid $1,930.74, resulting in an underpayment of $1.03 ($1,931.77 - $1,930.74).
36. Based on my review of the time records, payroll records, and Earning Dictionary, <u>it appears that Defendants' calculation of the regular rate of pay, in certain instances, resulted in overtime premium payments that are inconsistent with my understanding of how the regular rate of pay is to be calculated.</u> In addition, I have noted that the Defendants' payroll system includes certain non-work related hours in the computation of the regular rate of pay, which effectively dilutes the employee's regular rate of pay for purposes of computing overtime premiums due.[17]

*Shift Differential*

37. I have also been asked by counsel to review the time and payroll records regarding unpaid shift differentials. Based on the deposition transcript of North Cypress' Payroll Coordinator[18], evening shift took place from 3:00 pm to 11:00 pm, the night shift took place from 11:00 pm to 7:00 am, and the weekend shifts took place from Friday night at 11:00 pm to Monday morning at 7:00 am.
38. Based on my review of the Time Detail reports, it appears that, within a three-year statute of limitations, employees worked approximately 126,450 evening shift hours, 70,880 night shift hours, and 92,310 weekend shift hours. Based on my review of the related Payroll History reports or Payroll Stubs, it appears that employees were paid shift differentials for approximately 114,937 evening shift hours, 61,778 night shift hours, and 92,548 weekend shift hours.

---

[16] $1,969.69 less PTO taken of $38.95.

[17] Based on Exhibit 4 to the August 11, 2015 deposition of Sheila Stowe, the North Cypress Earnings Dictionary states that Call Back hours are included in both total remuneration ("OT – Exclude $: N[o]") and also included in the computation of actual hours worked ("OT – Exclude HRS: N[o]"). However, it is my understanding that at least one hour of time is paid for Call Back pay that does not represent actual hours worked (deposition of Sheila Stowe, August 11, 2015, page 168). Similarly, the Earning Dictionary and pay records reviewed indicate that Defendants are also including non-work related hours in the calculation of regular rate for certain "36/4" employees, that is, employees working three 12-hour weekend shifts who are compensated for 40 hours of pay for working 36 hours.

[18] Deposition testimony of Sheila Stowe, June 23, 2014, pages 49-50.

39. Given that there is a difference between the evening, night, and weekend shift hours worked on the one hand, and the hours paid on the other hand, amounting to approximately 20,377 hours, or 7.04% of the total, employees may be due these unpaid shift differentials. In addition, these unpaid shift differentials may affect the calculation of the regular rate of pay, which could result in additional overtime premiums being due for any hours worked in excess of 40 hours during the work week. <u>Currently, the impact of these potential unpaid differentials have not been factored into my analysis of potential damages. If it is found that unpaid shift differentials should have paid, and therefore included in the regular rate of pay, the potential damages calculated for other categories may also increase.</u>

*Rounding*

40. Plaintiff and all others similarly situated have alleged that they were advised to only clock in during the seven minutes before the start of their shifts and to clock out no more than seven minutes after the end of their shifts, times which round in Defendants' favor. They were also advised that clocking in or clocking out at times which did not round in Defendants' favor was "mooching" and would subject them to discipline.
41. Of the 63,629 days in the Time Detail reports, 50,506 days have punch in and out times.[19] Of the 50,506 days, 2,184 days occurred on or after January 11, 2015, which, in my review of the Time Detail, appears to be when Defendants started paying employees based on actual punch times rather than rounded punch times. Of the 48,322 (i.e., 50,506 – 2,184) days before January 11, 2015, 47,262 days are within a three-year statute of limitations.
42. Of the 47,262 days, 42,312 have first (beginning of the day) punch in times that would be rounded to the nearest quarter hour and 4,950 have first punch in times at the quarter hour. Of the 42,312 days, 26,931, or 63.65%, round in Defendants' favor. My analysis shows, with respect to the first punch in time of the day, an average rounding bias in Defendants' favor of 0.02 hours, or 1.20 minutes, per day and an average rounding bias in Defendants' favor of 0.13 hours, or 7.80 minutes, per employee pay period.[20] My analysis also shows, with respect to the first punch in time of the day, an average rounding bias in Defendants' favor of five hours, or 300 minutes, per employee, based on rounding biases ranging from 18.68 hours in the employee's favor[21] to 61.19 hours in Defendants' favor[22].
43. Of the 47,262 days before January 11, 2015, within a three-year statute of limitations, and with punch in and out times, 39,660 have last punch out times that would be rounded to the nearest quarter hour and 7,602 have last punch out times at the quarter hour. Of the 39,660 days, 16,727, or 42.18%, round in Defendants' favor. My analysis shows, with respect to the last punch out time of the day, an average rounding bias in employees' favor of 0.01 hours, or 0.60 minutes, per day and an average rounding bias in employees' favor of 0.08 hours, or 4.80 minutes, per employee pay period.[23] My analysis also shows, with respect to the last punch out time of the day, an average rounding bias in employees' favor of 3.16 hours, or 189.60 minutes, per employee, based on rounding biases ranging from 46.29 hours in the employee's favor[24] to 7.18 hours in Defendants' favor[25].

---

[19] Days without punch in and out times may include compensable days off, on call days, orientation, or education.
[20] The average rounding bias is calculated based on all the first punch in times of the day, including those at the quarter hour.
[21] Based on 44 pay periods for Edgar Ofina.
[22] Based on 80 pay periods for Charles Nazer Sr.
[23] The average rounding bias is calculated based on all the last punch out times of the day, including those at the quarter hour.
[24] Based on 80 pay periods for Charles Nazer Sr.
[25] Based on 46 pay periods for Mary Green.

44. <u>Any potential unpaid wages</u> would be calculated at the applicable regular rate of pay[26] for hours worked up to 40 in a work week, based on the hours per the weekly Time Summary reports, and at one and one-half (1.5) times the applicable regular rate of pay for hours worked in excess of 40 in a work week.
45. Because the overall frequency and duration of time punch rounding was in favor of the employer, the net effect of the rounding policy results in an underpayment to the employees.[27] <u>Potential unpaid wages have been calculated, by employee, for each week where, based on the first punch in time and last punch out time of the day, total actual hours were greater than total rounded hours. Those potential unpaid wages, within a three-year statute of limitations, total $41,708.</u> Those potential unpaid wages, within a two-year statute of limitations, total $25,571.

*Meal Deduction*

46. <u>Plaintiff and all others similarly situated have alleged that they were routinely called upon to work through or were regularly interrupted while taking their unpaid meal breaks. They alleged they were either unaware of the procedure to request pay for missed or interrupted meal breaks or else were discouraged from doing so due to management hostility</u> and fear for their jobs.
47. It is my understanding that Defendants automatically deducted 30 minutes for an unpaid meal break from shifts of six hours or more unless the automatic meal deduction was cancelled. The apparent rationale for such an automatic meal deduction policy, namely, the premise that individuals subject to the policy would get uninterrupted meal breaks of 30 minutes in length, <u>appears to be inconsistent with the experiences of missed, interrupted, or short meal breaks set forth in Plaintiffs' Declarations.</u>[28]
48. In my review of the 50,506 individual employee work days with punch in and out times in the Time Detail, 49,385 employee work days are within a three-year statute of limitations. I noted 609 cancelled deductions during this same time period. Of the 609 individual employee work days with cancelled deductions, 441 were days of six hours or more; 168 were days of less than six hours and would not be subject to the automatic meal deduction.
49. <u>Of the 49,385 days within a three-year statute of limitations with punch in and out times, 47,425 were days of six hours or more. Of the 47,425 days of six hours or more, 44,673, or 94.20%, have at least one entry where, based on the punch in and out times, the difference</u> between rounded hours (or actual hours after January 10, 2015) and hours paid is 30 minutes. 2,190 days, or 4.62%, have entries with no difference[29] or at least one entry with a cancelled deduction, and the remaining 562 days, or 1.19%, have an entry where the difference between rounded hours (or actual hours after January 10, 2015) and hours paid is something other than 30 minutes. <u>1,960 of the 49,385 days within a three-year statute of limitations with punch in and out times were days of less than six hours. Of the 1,960 days, 33, or 1.68%, have at least one entry where, based on the punch in and out times, the</u> difference between rounded hours (or actual hours after January 10, 2015) and hours paid is 30 minutes; 1,868 days, or 95.31%, have entries with no difference or an entry with at least

---

[26] When the regular rate of pay could not be calculated, the standard base rate was used.

[27] My analysis shows, in total with respect to the first and last punches of the day, an average rounding bias in Defendants' favor of 0.01 hours, or 0.60 minutes, per day and an average rounding bias in Defendants' favor of 0.05 hours, or three minutes, per employee pay period.

[28] For example, Jara Neal Willis cannot recall an uninterrupted meal break over the four years she worked for Defendants. More than 50% of Jaime Killian's meal breaks were either interrupted or cut short. Mary Jo Nazer never had a true meal break over the three years she worked for Defendants. And, Sarah Thompson had no more than one or two 30-minute breaks in the two years she worked for Defendants.

[29] Relates to 1,749 days, of which 1,583 have more than one time entry and may reflect a meal break.

50. If it is found that Defendants' practices with respect to unpaid meal breaks are unlawful, any potential unpaid wages for unlawful automatic 30-minute meal deductions would be calculated at the applicable regular rate of pay[30] for hours worked up to 40 in a work week, based on the related hours per the weekly Time Summary reports as well as the additional actual hours, and at one and one-half (1.5) times the applicable regular rate of pay for hours worked in excess of 40 in a work week.
51. Potential unpaid wages have been calculated, by employee, for each week where, based on the punch in and out times, there were differences of 30 minutes between rounded hours (or actual hours after January 10, 2015) and hours paid. Potential unpaid wages related to these total differences, within a three-year statute of limitations, are $687,250, of which $346,155 relates to hours worked up to 40 in a work week and $341,095 relates to hours worked in excess of 40 in a work week. Potential unpaid wages related to these total differences, within a two-year statute of limitations, are $423,134, of which $220,583 relates to hours worked up to 40 in a work week and $202,551 relates to hours worked in excess of 40 in a work week.[31]
52. As a consequence of violating the FLSA, Defendants may also be subject to liquidated damages and interest based on unpaid wages.

*[signature]*

David Breshears, CPA/CFF
August 24, 2015

---

[30] When the regular rate of pay could not be calculated, the standard base rate was used.
[31] I was also asked by counsel to calculate potential unpaid wages within the four-year statute of limitations applicable to the FLSA class members' state-law claims, but this was not possible because the majority of the electronic Time Detail reports and electronic Payroll History reports provided by Defendants dated from December 4, 2011 forward, and not from November 14, 2009 forward.