United States District Court
Southern District of Texas

**ENTERED**

December 15, 2015

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JARA NEAL WILLIS, ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:13-cv-3375** |
| | § | |
| **ROBERT BEHAR, INDIVIDUALLY,** | § | |
| **AND NORTH CYPRESS MEDICAL** | § | |
| **CENTER OPERATING COMPANY** | § | |
| **GP, LLC, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

## O R D E R

Pending before the Court are Defendants' motions to decertify Plaintiff's Rule 23 subclass and FLSA Section 216(b) sub-class. (Instruments No. 228; No. 229). Also pending before the Court is Defendants' motion to strike the declarations of Jara Neal Willis, Sarah Thompson, and Mary Jo Nazer and objections to same. (Instrument No. 246). Also pending before the Court is Plaintiff's motion to strike Defendants' evidence submitted in support of their motions for decertification. (Instrument No. 239).

### I.

### A.

Plaintiff Jara Neal Willis ("Plaintiff" or "Willis"), individually and on behalf of all others similarly situated, filed an original Complaint against Defendants Roberts A. Behar ("Behar"), North Cypress Medical Center Operating Company GP, LLC ("North Cypress LLC"), and North Cypress Medical Center Operating Company, Ltd. ("North Cypress Ltd.") on November 14,

2013 in the United States District Court for the Southern District of Texas. (Instrument No. 1). Plaintiff filed suit to recover unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA") and to assert Texas state law claims of breach of contract, *quantum meruit*, and unjust enrichment. (*Id.*). Plaintiff then filed a First Amended Complaint ("FAC") (Instrument No. 29) on February 4, 2014, and a Second Amended Complaint ("SAC") with leave of this Court on July 15, 2014 (Instrument No. 73).

The Court held a hearing on Plaintiff's motions to certify both a FLSA and Rule 23 class on October 17, 2014. In its Order on December 12, 2014, the Court conditionally certified a FLSA and Rule 23 sub-class of individuals with the same job responsibilities as lead Plaintiff Jara Willis. (Instrument No. 123).

**B.**

From January 4, 2010 to November 7, 2013, Plaintiff worked as an Intensive Care Unit registered nurse at North Cypress Medical Center in Cypress, Texas. (Instrument No. 73 at 5-6). The Medical Center is operated as a single enterprise by Defendants Behar, North Cypress LLC, and North Cypress Ltd. (*Id.*). Plaintiff alleges that North Cypress is a major emergency room in Northwest Houston and that Defendants employ approximately 1,500 people, the vast majority of whom (99%) work at the Medical Center. (*Id.*). Plaintiff alleges that Defendants classified her and potential class members as FLSA non-exempt employees, paid them on an hourly basis, and that she and other class members were entitled to overtime compensation for hours worked in excess of forty in a week. (*Id.*).

On July 15, 2015, Plaintiff Jara Neal Willis ("Plaintiff"), individually and on behalf of all others similarly situated, filed her Second Amended Complaint ("SAC") against Robert A.

Behar, individually, and North Cypress Medical Center Operating Company GP, LLC, and North Cypress Medical Center Operating Company, Ltd. (collectively, "Defendants") to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, and to recover unpaid hourly wages under Texas state claims of breach of contract, *quantum meruit*, money had and received, and fraud. (Instrument Nos. 1, 73). Plaintiff alleges that she and putative class members are current and former employees employed by Defendants at the North Cypress Medical Center ("the Medical Center") in Cypress, Texas at any time during the relevant period. Plaintiff alleges that Defendants classified her and potential class members as FLSA non-exempt employees, paid them on an hourly basis, and that she and other class members were entitled to overtime compensation for hours worked in excess of forty in a week. (Instrument No. 73 at 5-6).

Defendants use the Kronos electronic timekeeping system to track hours worked by hourly employees. (Instrument No. 73 at 6). For payroll purposes, North Cypress utilizes a rounding feature of the system which rounds the recorded time to the nearest quarter hour[1]. (*Id.*). During the new hire general orientation, Plaintiff alleges she was advised that hourly employees are to clock in for their shifts during the 14-minute window running from 7 minutes before the shift start time until 7 minutes after the start time. (Instrument No. 73 at 10). However, after she began working, Plaintiff alleges that her supervisors informed her that she was required to clock in during the 7-minute window before her shift start time and that clocking in thereafter could subject her to disciplinary action. (Instrument No. 73 at 10-11). Plaintiff alleges that her supervisors characterized the act of clocking in or out at a time which did not round in favor of North Cypress as "mooching" and prominently and frequently warned Plaintiff and other

---

[1] For example, a 7:53 a.m. clock-in time rounds forward to 8:00 a.m., and a 5:05 p.m. clock-in time rounds backwards to 5:00 p.m.

employees that mooching would be a disciplinary infraction. (*Id.*). Plaintiff alleges that North Cypress systematically tracks "mooching" in its Kronos system, regularly issued directives to managers to crack down on the practice, and posted a variety of "no mooching" signs in public view in the hallways near the electronic timekeeping devices in the hospital and employee areas. (Instrument No. 73 at 7). Plaintiff asserts that this no-mooching policy, which ensured that all rounding was in favor of North Cypress, caused incorrect overtime calculations and compensation to hourly employees. (Instrument No. 73 at 8). Plaintiff estimates that she is owed at least 43 minutes of compensation during 2013 as a result of Defendant's rounding and mooching policies, and that other opt-in plaintiffs are owed from 40 minutes to 5 hours and 45 minutes[2] of unpaid compensation during 2013. (Instrument No. 73 at 14).

Plaintiff also alleges that at the general orientation, she and potential class members were told that North Cypress provides hourly employees with a 30-minute unpaid meal break each shift which is automatically deducted from each shift worked. (*Id.*). Plaintiff and potential class members assert that they were routinely called upon to work during and through their unpaid meal breaks because of exigent and emergent patient care issues that would arise. (Instrument No. 73 at 9-12). Plaintiff alleges that when she and her coworkers were assigned to ICU beds, they received a meal break which was always interrupted by the charge nurse, other nurses, physicians, or patients and families without exception for the approximately four years that Plaintiff worked at North Cypress. (*Id.*). Plaintiff alleges that when she and potential class members were assigned to overflow unit beds, they did not receive any meal breaks. (*Id.*). Plaintiff's SAC asserts that North Cypress supervisors directly required, requested, and/or witnessed as hourly employees worked through their 30-minute meal breaks and that North

---

[2] Plaintiff alleges that these amounts are the unpaid hours owed to opt-in plaintiffs Octave Carter and Jaime Killian, respectively.

Cypress management was actively aware that Plaintiff and potential class members worked unpaid overtime each week and accepted the benefit of their unpaid labor. (*Id.*).

Plaintiff's hourly rate ranged from $35.00- $39.00 per hour during her employment at North Cypress. (Instrument No. 73 at 13). From her start date in January 2010 to August 2012, Plaintiff worked three to five 12-hour shifts per week. (*Id.*). From August 2012 to the end of her employment in November 2013, Plaintiff worked two to three 12-hour shifts per week. (*Id.*). Plaintiff alleges that she is owed unpaid overtime wages for every 30-minute meal period that she worked through in weeks where she worked four or more shifts, and unpaid hourly wages for every 30-minute meal period that she worked through in weeks where she did not exceed forty hours. (*Id.*)

Plaintiff's SAC alleges that Defendants violated the FLSA and Texas state law, and seeks damages as a result of Defendants' breach of contract, *quantum meruit*, money had and received, and fraud. (Instrument No. 73).

On December 12, 2014, the Court conditionally certified a Rule 23 class of current and former hourly employees who worked 40 or more hours per week in direct patient care positions for Defendants in any week falling in the relevant period. (Instrument No. 123). The Court also conditionally certified a FLSA class of current and former direct care employees who were denied overtime pay based on unpaid and missed meal break due to Defendants' anti-mooching policy. (Instrument No. 123).

## C.

In a motion filed on September 14, 2015, Defendants move to decertify Plaintiff's FLSA §216(b) collective sub-class consisting of all Defendants' employees who worked in direct patient care for more than 40 hours per week and were not paid for missed or interrupted meal breaks from November 14, 2010 through November 14, 2013. (Instrument No. 228). Defendants urge the Court to decertify the FLSA class on the grounds that Plaintiff cannot demonstrate that she is similarly situated to potential class members.

First, Defendants assert that of the 203 conditional class members, 76 requested and obtained a cancelled deduction for a missed or interrupted meal break, which indicates that 37.4% of the proposed class members understood and availed themselves of the cancelled deduction policy and are now estopped from making such claims. (Instrument No. 228 at 11). Second, Defendants assert that 16 members of the conditional class, or 9%, were or are supervisors and/or Charge Nurses who were in charge of overseeing cancelled deductions for other employees. (Instrument No. 228 at 11). As such, Defendants assert that these members cannot be similarly situated to lead plaintiff Willis. Third, Defendants point to the 75 conditional class members, or 37% of the class, who signed the Meal Break Policy and Acknowledgment, stating that they understand the meal break policy and how to obtain pay for missed or interrupted meal breaks. Defendants allege that these 75 class members cannot claim ignorance of the policy and make claims similar to those of lead Plaintiff Willis. (Instrument No. 228 at 12). Fourth, Defendants point to the variation among conditional class members in the number of cancelled deductions claimed, job titles, shift types, and individual statute of limitations. (Instrument No. 228). Defendants' motion continues to list 23 paragraphs of various arguments that Plaintiff Willis is not similarly situated to the conditional class. However, the majority of

these arguments are repetitive to the four discussed above or were previously addressed in the Court's December 2014 Order conditionally certifying the class and do not warrant reconsideration at this stage in the proceedings.

In response, Plaintiff asserts that all conditional class members share common facts relating to Defendants' control of their meal breaks for Defendants' predominant benefit, and that no individualized defenses exist as to Plaintiff's claims. (Instrument No. 238). First, Plaintiff asserts that all conditional class members share geographic proximity on Defendants' main hospital campus in Cypress, Texas, and that all class members are non-exempt hourly employees engaged in direct patient care at North Cypress Medical Center. (Instrument No. 238 at 3-4). Second, Plaintiff asserts that all class members are similarly situated because all members had 30 minutes automatically deducted from each shift of 6 hours or more, and routinely worked through their entire meal breaks or had their meal breaks interrupted by work demands. (Instrument No. 238 at 3-6). Specifically, Plaintiff asserts that class members were required to remain on the hospital campus during all meal breaks to be available to provide patient care, and that all class members were required to carry hospital telephones to answer patient care questions. (Instrument No. 238 at 6-9). Additionally, Plaintiff contends that Defendants lack individualized defenses as to specific class members because they have only proffered immaterial distinctions among the class members, including distinctions that the Court has previously addressed at hearing and in its December 2014 Order. (Instrument No. 238 at 10-15). For instance, Plaintiff contends that Defendants repeatedly rely on the variance in the number of cancelled deductions awarded to various members of the conditional class to suggest that any difference in cancelled deductions warrants an individual defense. In response, Plaintiff asserts

that these variances are immaterial to her theory that there were no bona fide meal periods for direct patient care employees at North Cypress Medical Center. (Instrument No. 238 at 10-11).

## D.

In a motion filed on September 14, 2015, Defendants move to decertify Plaintiff's Rule 23 collective sub-class consisting of all employees of Defendants who worked in direct patient care for less than 40 hours per week and who were not paid for missed or interrupted meal breaks from November 14, 2009 through November 14, 2013. (Instrument No. 229). First, Defendants assert that the class does not meet Rule 23 commonality because the class members do not have the same injuries, the same supervisors, or common contentions that would make possible a class-wide resolution. (Instrument No. 2209 at 16-19). Specifically, Defendants contend that meal break cancelled deductions vary substantially across the class members, and that Willis and 1,413 class members who are former employees have no standing to request prospective injunctive relief, and that the applicable statute of limitations is different for each class member. (Instrument No. 229 at 18-19). Second, Defendants contend that Plaintiff's class does not meet Rule 23 typicality because Defendants seek to assert the affirmative defense of waiver against Willis and several other class members who allegedly accepted and agreed to Defendants' employee handbook, which instructed employees on the "Missed Meal Break Forms." (Instrument No. 229 at 19-22). Third, Defendants claim that Plaintiff's class contains numerous conflicts of interest which should persuade the Court to decertify the class in favor of individual litigation of the class's diverse claims. (Instrument No. 229 at 22-23). For instance, Defendants point to class members who, unlike Willis, requested and obtained cancelled deductions for meal periods, who worked and received overtime pay, sought unpaid wages through the TWC, are

current employees who have standing to pursue prospective injunctive relief, and who are supervisors and Charge Nurses who were tasked with approving cancelled deduction requests. (Instrument No. 229 at 22-23). Fourth, Defendants also assert that the conditional class does not meet Rule 23 numerosity, but offers no argument in support. (Instrument No. 229 at 16).

In response, Plaintiff relies on the Court's December 2014 Order of conditional certification, which limited the class definition to only direct patient care employees subject to the same employee time-keeping practice and working conditions. (Instrument No. 241). In particular, Plaintiff points to the Court's previous ruling that the current Rule 23 class satisfies all Rule 23 requirements of numerosity, typicality, commonality, and adequacy of counsel. Plaintiff asserts that the three class members who have filed claims through the TWC do not defeat typicality for a 2,300-member class. (Instrument No. 241 at 13-16). First, as to the numerosity requirement, Plaintiff asserts that Defendants have offered no argument as to why the Court should revisit its prior finding of numerosity. (Instrument No. 241 at 16). Second, as to commonality, Plaintiff relies on this Court's prior finding that resolving the legality of the Defendants' timekeeping policies would affect all or a significant number of the proposed class, and that the issue of Defendants' actual or constructive knowledge of employees' missed or interrupted meal periods would likewise affect a significant number of the class. Plaintiff asserts that all class members were denied pay for days when the meal deduction period was not reversed. Third, as to Rule 23 typicality, Plaintiff asserts that Defendants have simply repeated its argument from the conditional certification stage which has already been addressed by the Court in its December 2014 Order. Plaintiff relies on Fifth Circuit case law which states that as long as "claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See James v. City of Dallas, Tex.*, 254 F.3d 551, 570 (5th

Cir. 2010). Fourth, Plaintiff asserts that Defendants have raised no new arguments against the adequacy of counsel, and that the Court has already addressed this issue at the certification stage and no new evidence warrants the reconsideration of the Court's prior ruling. (Instrument No. 241 at 25-27).

## II.

### A.

Most district courts have held that evidence need not be admissible under the Federal Rules of Evidence—or that the rules should not be applied strictly—on a motion for class certification. *See, e.g., Sherman v. Am. Eagle Exp., Inc.*, CIV. A. 09–575, 2012 WL 748400 (E.D.Pa. Mar. 8, 2012); *Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455 (S.D.Cal.2012); *Bell v. Addus Healthcare, Inc.*, No. C06–5188RJB, 2007 WL 3012507 (W.D.Wash. Oct. 12, 2007); *Carrier v. American Bankers Life Assur. Co. of Fla.*, Civ. No. 5–CV–430–JD, 2008 WL 312657, *3 (D.N.H. Feb. 1, 2008); *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 (N.D.Cal.2010); *Jenkins v. Macatawa Bank Corp.,* No. 1:03–CV–321, 2006 WL 3253305 (W.D.Mich. Nov. 9, 2006); *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 597 (D.Minn.1999).

The Fifth Circuit has held that when conducting its rigorous analysis of whether a class should be certified, "findings must be made based on adequate admissible evidence to justify class certification." *Unger v. Amedisys Inc.*, 401 F.3d 316, 319 (5th Cir. 2005); MCLAUGHLIN ON CLASS ACTIONS § 3:14 (10th ed.); *see, e.g., Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938, 14 Fed. R. Serv. 3d 385 (7th Cir. 1989). The Fifth Circuit also held that "[a]t the

certification stage, reliance on unverifiable evidence is hardly better than relying on bare allegations." *Unger v. Amedisys Inc.*, 401 F.3d 316.

Generally, to satisfy the authentication requirement for an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what it is claimed to be. Fed. R. Evid. 901. Allegations in a declaration that are not based on the personal knowledge of the declarant are incompetent evidence and should be stricken for lack of competence. *Owen v. Golf & Tennis Pro Shop, Inc.*, 4:09-CV-00571, 2010 WL 3859640 (E.D. Tex. Sept. 30, 2010).

## B.

Plaintiff moves to strike Defendants' submitted affidavit of Leigh Ann Parsons on the grounds that it summarizes records of payroll information, paystubs, and check registers that were never produced. (Instrument No. 239 at 2-3). Plaintiff also moves to strike the Spreadsheet contained in Exhibit 1A, the PowerPoint presentation contained in Exhibit 3, and Defendants' Expert Witness Report, all on the grounds that these exhibits were either never produced during discovery or summarize records of payroll information, pay stubs, and check registers which were never produced. (Instrument No. 239).

In response, Defendants assert that the exhibits at issue were in fact produced to Plaintiff under different docket labels, or were not required to be produced to Defendants because of the limited scope of Plaintiff's motions for conditional certification. (Instrument No. 245). Regardless, the disputed exhibits proffered by Defendants did not aid the Court in its disposition of Defendants' motions for decertification. Therefore, at this preliminary stage, the Court **DENIES** Plaintiff's motion to strike and will consider all available evidence to determine

whether Defendants have adequately demonstrated a basis for class decertification. (**Instrument No. 239**).

## C.

Defendants move to strike Plaintiff's submitted declarations of Plaintiff Jara Neal Willis and opt-in Plaintiffs Sarah Thompson ("Thompson") and Mary Jo Nazer ("Nazer"), on the grounds that they contain impermissible hearsay, speculation, and conclusions, and that they lack personal knowledge and contradict the declarant's sworn deposition testimony. (Instrument No. 246). Specifically, Defendants allege that Thompson's declaration contains hearsay from unidentified individuals at North Cypress, speculates as to the Defendants' intentions, and provides calculations of underpaid overtime without any foundation or qualifying expertise. (*Id.*). Defendants also allege that Nazer's declaration includes hearsay statements outside of her personal knowledge regarding conversations about interrupted meal breaks. (Id.). Defendants also allege that Plaintiff's declaration includes statements that contradict her deposition testimony regarding whether Dr. Behar ever fired a person who had walked across the street to Jack-in-the-Box, whether she knew about the policy to obtain a reversal for automatic meal deductions, and whether she was afraid to fill out the form because of the anti-mooching policy. (Id.).

In response, Plaintiff addresses Defendants' concerns with the declarations of Plaintiff, Thompson, and Nazer and explains the foundation and factual basis for each assertion at issue (Instrument No. 256). Plaintiff's response addresses Defendants' allegations and notes that in some cases, an individual's deposition took place after their submitted declaration and thus it is not inconsistent for the deponent's answer to differ from that in her earlier declaration because

she had learned new information before her deposition. (Instrument No. 256). In this case, the Court should find that there is no contradiction between the declarations at issue and each declarant's deposition testimony. *See Owen v. Golf & Tennis Pro Shop, Inc.*, 2010 WL 3859640.

Therefore, the Court **DENIES** Defendants' motion to strike and will consider all available evidence to determine whether Defendants have adequately demonstrated a basis for class decertification. (**Instrument No. 246**).

## III.

### A.

Section 207(a) of the FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) of the FLSA provides that a person may maintain an action on "behalf of himself . . . and other employees similarly situated" to recover unpaid overtime wages. 29 U.S.C. § 216(b). However, several categories are exempted from the FLSA's overtime compensation requirements, including those classified as "outside sales employees." 29 C.F.R. § 541.500. Outside sales employees are defined as any employee whose primary duty is making sales and "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." *Id.* at § 541.500(a). "The logic of the exemption is that '[s]uch [a] salesman, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates.'" *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013) (quoting *Jewel Tea Co. v. Williams*, 118 F.2d 202, 207–08 (10th Cir. 1941)).

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step approach in *Lusardi*, which imposes different and less stringent requirements than a Rule 23 class action, and the *Shushan* approach, which imposes the requirements of a Rule 23 class action. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo.1990). In *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 904 (2003),[3] the Fifth Circuit found it unnecessary to determine which method is most appropriate. Since *Mooney*, however, the Fifth Circuit has acknowledged the inapplicability of Rule 23 to a § 216(b) action in at least one context, holding that the interlocutory appeal provisions of Rule 23(f) do not apply in a § 216(b) action because a "216(b) FLSA action is not a Rule 23 class action." *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 (5th Cir. 2005). This Court followed *Lusardi*'s stage one analysis when it determined that conditionally certification was appropriate. *See generally* (Instrument No. 29).

The first stage of the *Lusardi* analysis is the "notice stage," in which the district court decides whether to issue notice to potential class members. *Mooney*, 54 F.3d at 1213-14. "*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Id.* at 1213. The court's decision in this first stage is often based only on the pleadings and affidavits that have been submitted. *Id.* at 1213-14. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with

---

[3] Although *Mooney* was litigation under the Age Discrimination in Employment Act ("ADEA"), it applies here because the ADEA explicitly incorporates Section 216(b) of the FLSA.

notice and the opportunity to opt-in. *Id.* at 1214. Although lenient, this standard requires a factual basis for allegations that potential members "were together the victims of a single decision, policy, or plan." *Id.* at 1214. At this first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

On December 14, 2014, the Court conditionally certified the following FLSA class: "All employees who worked in direct patient care for 40 hours or more per week and who were not paid for missed or interrupted meal breaks during the three-year period prior to the filing of Plaintiff's Complaint on November 14, 2013." (Instrument No. 123). After conditional certification of the class, the action has proceeded as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. After a hearing held on October 17, 2014, the Court found a reasonable basis for crediting the assertions that aggrieved individuals exist, and that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted. *Tolentino*, 716 F. Supp. 2d at 647; *Maynor*, 2008 U.S. Dist. LEXIS 42488 at 17. Additionally, the Court found that those individuals wanted to opt-in to the lawsuit, and that there is a demonstrated similarity among the individual situations and sufficient factual nexus which binds lead Plaintiff Jara Willis with the class members as victims of Defendants'

time-keeping and anti-mooching policies. *See Tolentino*, 716 F. Supp. 2d at 647; *Maynor*, 2008 U.S. Dist. LEXIS 42488 at 17.

Since the close of discovery in this case occurred on August 1, 2015, the Court now enters the second phase of the *Lusardi* analysis. With the aid of information gained in discovery, the court considers if the opt-in plaintiffs are "similarly situated" to the named plaintiffs. If they are, the representative action may proceed. If they are not, the class is decertified, the opt-in plaintiffs are dismissed, and the original named plaintiffs may proceed with their own claims only. At this second stage, the burden is on the plaintiff to prove that the individual class members are similarly situated. *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280-281 (N.D. Tex. 2008) (citing *Bayles v. Am. Med. Response of Col., Inc.*, 950 F. Supp. 1053, 1062-63 (D. Colo. 1996); *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003)). Because the parties have been able to conduct discovery, the similarly-situated inquiry at the second stage is much more stringent. *Id.* (citing *Harris v. FFE Transp. Servs., Inc.*, NO. 3:05-CV-0077-P, 2006 U.S. Dist. LEXIS 51437, at *7-8 (N.D. Tex. May 15, 2006)). The Court considers several factors at this stage in the analysis, including: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Mooney*, 54 F.3d at 1213 n.7 (citing *Lusardi*, 118 F.R.D. at 359).

While the plaintiffs must show that putative class members are "similarly situated," this does not require that they be "identically situated." *Proctor*, 250 F.R.D. at 280-281 (citing *Helmerich*, 1992 U.S. Dist. LEXIS 5367, at *2). Instead, the question is if there is "a demonstrated similarity among the individual situations[,] . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged

[policy or practice.]" *Id.* (citing *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1998)). Decertification is proper if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D. Colo. 1987). The Court must also consider if it can coherently manage the class in a manner that will not prejudice any party. *Lusardi*, 118 F.R.D. at 360. If there is "no single decision, policy, or plan" that affects the putative class members, the case will encounter manageability problems and the motion to decertify should be granted. *Id.*

## B.

In this case, Defendants argues that the class member's disparate factual and employment settings require decertification of the collective action. First, Defendants assert that of the 203 conditional class members, 76 requested and obtained a cancelled deduction for a missed or interrupted meal break, which indicates that 37.4% of the proposed class members understood and availed themselves of the cancelled deduction policy and are now estopped from making such claims. (Instrument No. 228 at 11). Second, Defendants assert that 16 members of the conditional class, or 9%, were and are supervisors and/or Charge Nurses who were in charge of overseeing cancelled deductions for other employees. (Instrument No. 228 at 11). As such, Defendants assert that these members cannot be similarly situated to lead plaintiff Willis. However, given that the conditional FLSA class is limited to only those who were not paid for missed or interrupted meal periods, it is immaterial that some class members obtained cancelled deductions or had knowledge of the cancelled deduction policy.

Third, Defendants point to the 75 conditional class members, or 37% of the class, who signed the Meal Break Policy and Acknowledgment, stating that they understand the meal break

policy and how to obtain pay for missed or interrupted meal breaks. At the November 2, 2015 hearing held on Defendants' de-certification motion, Defendants asserted that these 75 class members cannot claim ignorance of the policy and make claims similar to those of lead Plaintiff Willis. (Instrument No. 228 at 12). Defendants therefore assert that Lead Plaintiff Willis cannot properly represent the interests of the class because some class members signed written acknowledgments of Defendants' cancelled deduction policies. However, because Plaintiff's claim includes that Defendants propagated a policy of intimidation and public shaming to dissuade direct patient care employees such as Willis from utilizing the cancelled deduction policy, it is immaterial that some class members signed the Meal Break Policy and Acknowledgement. Furthermore, Defendants are not barred from claiming the affirmative defense of waiver against those class members.

Fourth, Defendants point to the variation among conditional class members in the number of cancelled deductions claimed, job titles, shift types, and individual statute of limitations. (Instrument No. 228). Defendants' motion lists 23 paragraphs of various arguments that Plaintiff Willis is not similarly situated to the conditional class. However, the majority of these arguments are repetitive of the arguments discussed above or were previously addressed in the Court's December 2014 Order conditionally certifying the class and do not warrant reconsideration. Plaintiffs respond that "a factual nexus which binds [Plaintiffs] together as victims of an alleged policy or practice" is sufficient for the Court to conclude that Plaintiffs are similarly situated. *See Thiebes v. Wal-Mart Stores, Inc.*, CIV. 98-802-KI, 1999 WL 1081357 *2 (D. Or. Dec. 1, 1999); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008)). Plaintiff asserts that all class members are similarly situated because all members had 30 minutes automatically deducted from each shift of 6 hours or more, and routinely worked through their entire meal breaks or had

their meal breaks interrupted by work demands. (Instrument No. 238 at 3-6). Specifically, Plaintiff asserts that class members were required to remain on the hospital campus during all meal breaks to be available to provide patient care, and that all class members were required to carry hospital telephones to answer patient care questions. (Instrument No. 238 at 6-9). In light of the pleadings, the Court agrees that Defendants lack individualized defenses as to specific class members because they have only proffered immaterial distinctions among the class members, including distinctions that the Court has previously addressed at hearing and in its December 2014 Order. (Instrument No. 238 at 10-15).

In this case, an individualized fact-intensive inquiry is not necessary to determine if Defendants violated the FLSA as to each individual Plaintiff. As noted in *Falcon*, at a minimum, "there must be meaningful identifiable facts or legal nexus [that] bind the claims." *Falcon*, 580 F. Supp. 2d at 535 (internal quotations and citing references omitted). Plaintiff has identified significant evidence supporting the conclusion that class members were similarly situated, leading the Court to conclude that the identified "defenses are not so individualized that they cannot be addressed by representative testimony." *Id.* at 535-38. Therefore, the disparate factual and employment settings of Plaintiffs weigh against decertification.

## C.

The final factor "direct[s] the court to consider the primary objectives of the FLSA collective action: (1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Reyes v. Texas Ezpawn, L.P.*, CIV.A. V-03-128, 2007 WL 101808 *6 (S.D. Tex. Jan. 8, 2007) (citing *Hoffman–LaRoche, Inc. v. Sperling*, 493 U.S.

165, 170 (1989)). "The court must also consider whether it can coherently manage the class in a manner that will not prejudice any party or be particularly burdensome on a jury." *Reyes*, CIV.A. 2007 WL 101808 at *6.

Plaintiffs argue that certification of the class will further judicial economy through pooling of resources and efficiently resolving common issues of law and fact arising from the same activity. In light of the parties' pleadings, the Court finds that judicial efficiency of proceeding as a collective action outweighs the duplicitous litigation that individual actions will require. *Id.* at *6. Plaintiffs' claims are amenable to generalized evidence because the individualized claims and individualized defenses are not highly fact intensive, and would not dominate or swallow and consume the entire case. *See Johnson*, 2005 WL 1994286 at *7. Defendants concede that there are undeniably some common issues of law and fact present in this case, and fairness and procedural considerations weigh toward continued certification. In considering the three-part test identified in *Mooney*, the Court finds that no factors support decertification. *See Mooney*, 54 F.3d at 1213 n.7. Accordingly, Defendants' Motion to Decertify the Collective Action is DENIED as to Plaintiff's FLSA class.

## IV.

Rule 23(c)(1) of the Federal Rules of Civil Procedure requires that the district court determine "[a]s soon as practicable" after the initiation of an action brought on behalf of a class, whether the action should be maintained as a class action. FED. R. CIV. P. 23(c)(1); 5 MOORE'S FEDERAL PRACTICE § 23.61[1]. "A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). The party seeking the class certification bears the burden of proof. *Id.,* at 740.  To be

certified, the class must meet all the requirements of Rule 23(a), as well as the requirements of one of the subsections of Rule 23(b).  5 MOORE'S FEDERAL PRACTICE § 23.61[1].  The district court has broad discretion in deciding to certify, and will be reversed on appeal only for abuse of discretion.  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999); *Castano*, 84 F.3d at 740; 5 MOORE'S FEDERAL PRACTICE § 23.61[1]. In determining whether a class should be certified, the court may not inquire into the merits of the suit, but may "look past the pleadings" to assess whether the Rule 23 requirements have been met. *Castano,* 84 F.3d at 744.

## A.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Impracticable does not mean impossible, rather that joinder would be "extremely difficult or inconvenient," and depends on the circumstances of the case, not merely the sheer numbers of putative class members. 5 MOORE'S FEDERAL PRACTICE § 23.22[1], [2]; *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). Relevant factors include: geographic dispersion of the class members; the ease of identification of the class members; the nature of the action; the size of each individual plaintiff's claim; and the effect of injunctive relief on future class members. *Zeidman,* 651 F.2d at 1038.  In order to prove numerosity, the moving party must proffer some evidence of the number of class members, or a reasonable estimate. *Id.*; 5 MOORE'S FEDERAL PRACTICE § 23.22[3][b].

In this case, Plaintiff alleges that the class is so numerous that joinder of all members is impracticable. (Instrument No. 65 at 15). Additionally, Defendants have proffered no argument against the Court's prior finding of numerosity at the conditional certification stage. Therefore, the Court finds that Plaintiff's class satisfies Rule 23 numerosity for continued certification.

**B.**

Rule 23(a)(2) also states that there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement tests the sufficiency of the class itself. 5 MOORE'S FEDERAL PRACTICE § 23.23 [3]. The test for commonality is not stringent; the class need only share one common question of law or fact to satisfy the requirement. 5 MOORE'S FEDERAL PRACTICE § 23.23[2]; *see Forbush v. J.C. Penny Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) ("The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members'").

In this case, Plaintiff alleges that the class shares at least one common question of law: whether Defendants knew or should have known with reasonable inquiry that employees were working through meal periods and not being properly compensated. FED. R. CIV. P. 23(a)(2); (Instrument No. 65 at 16-17). Under the Fifth Circuit holding in *M.D. ex rel. Stukenberg v. Perry,* Plaintiff must present more than questions common to the class. 675 F.3d 832 (5th Cir. 2012) ("any competently crafted class complaint literally raises common questions"). Rather, Plaintiff must establish that the class' claims can productively be litigated at once, and not merely allege a violation of the same legal provision by the same defendants. *Id.*; Fed. R. Civ. P. 23 (a)(2). Defendants assert that there is no commonality among the class because many class members did obtain cancellations of their automatic meal break deduction, and because class members have different limitation periods according to the statute of limitations for each state law claim. (Instrument No. 80 at 19-20). However, the Court's Order on December 12, 2014 previously analyzed this issue and held that common questions of law existed to sustain

conditional certification. Defendants appear to have rehashed its prior arguments without any novel legal theory or factual discoveries.

Therefore, this Court finds that Plaintiff's class satisfies Rule 23 commonality for continued certification.

## C.

Third, "[t]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement focuses on *the relationship between the interests of the representative parties and the interests of the class as a whole.* 5 MOORE'S FEDERAL PRACTICE § 23.24[1] ("if the legal theories of the class representative conflict with those of the absent class members, that lack of typicality precludes certification of the class"). Typicality is satisfied if the representative's claims arise from the same events, practice, or conduct as the class plaintiffs. 5 MOORE'S FEDERAL PRACTICE § 23.24[2]. "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics as that of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." 5 MOORE'S FEDERAL PRACTICE § 23.24[4]. *See also Lightbourn v. County of El Paso, Texas,* 118 F3d. 421, 426 (5th Cir. 1997) (holding that plaintiffs met the typicality requirement where a parallel action by class members would advance legal and remedial theories similar  or identical to those advanced by plaintiffs). In *Forbush,* the Fifth Circuit ruled that although most of the class was covered by pension plans other than the one that covered Forbush, the class met the typicality requirement because Forbush "framed her challenge in terms of Penney's general practice of overestimating social security benefits." 994

F.2d at 1106.    However, typicality will be defeated if the court must make a highly individualized factual determination to assess the defendant's liability. 5 MOORE'S FEDERAL PRACTICE § 23.24[4].

In this case, Defendants assert that Plaintiff's state law claims are not typical of the class' claims because many conflicts of interest exist among the class members. For instance, Defendants assert that Plaintiff failed to follow workplace policy in reporting her missed meals to obtain a cancelled deduction and thus waived her right to recover from Defendants under a breach of contract theory (Instrument No. 229 at 19-23). Additionally, Defendants note the conflict of interest in a class action that includes one opt-in Plaintiff who is a convicted defrauder and was terminated from employment with Defendants with cause for endangering patient lives. (Instrument No. 229 at 19-23). In response, Plaintiff alleges that her claims and Defendants' defenses are typical of those of the conditional class because she and other class members are hourly employees who were subject to Defendants' rounding policy and automatic meal break deduction even though she invariably worked during her meal breaks and, as a result, was not compensated for her work. (Instrument No. 241). As such, Defendants' claims do not defeat the typicality of Plaintiff's claims, because typicality does not require completely identical claims. *See* 5 MOORE'S FEDERAL PRACTICE § 23.24[4] ("the critical inquiry is whether the class representative's claims have the same essential characteristics as that of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." In this case, the Court finds that Plaintiff's conditional class has satisfied the typicality requirement under Rule 23 because the claims arise from Defendants' same course of conduct and share the same legal theory.

## D.

Finally, the court must determine if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy test functions to reveal conflicts between the representatives and the class members they claim to represent. *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231 (1997). Due process requires that the rights of absent class members be protected, as absent members are bound by the class action judgment. 5 MOORE'S FEDERAL PRACTICE § 23.25[1]. Adequacy of representation is tied to both commonality and typicality. *Amchem*, 117 S.Ct. at 2251 n.20. The adequacy requirement of Rule 23(a)(4) applies both to the class representative and the representative's counsel. *In re Asbestos Litigation*, 90 F.3d 963, 977 (5th Cir. 1996). First, the class representative must not have interests adverse to the class. Courts consider whether the named representative shares common interests with other class members; however, the interests of the representative and the other members need not be identical. 5 MOORE'S FEDERAL PRACTICE § 23.25[4][b]. The court considers whether the named representative will "vigorously prosecute" the interests of the class through the class counsel. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Second, class counsel must be qualified, experienced, and generally able to conduct the litigation. 5 MOORE'S FEDERAL PRACTICE § 23.25[5][a]. In assessing the adequacy of class counsel, the court may consider the counsel's past record in other litigation, experience, and the particular expertise of the counsel. 5 MOORE'S FEDERAL PRACTICE § 23.25[5][b][ii]; *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

In this case, Defendants assert that Plaintiff's counsel necessarily faces a conflict of interest from representing a class consisting of both former and current employees of North Cypress. (Instrument No. 80 at 27-28). However, the conflict issue goes to commonality and

typicality and should not be part of the Court's consideration of counsel's litigation ability or experience. *See* 5 MOORE'S FEDERAL PRACTICE § 23.25[5][b][ii]; *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, the Court finds that Lead Plaintiff Willis and the Mabry law firm will fairly and adequately protect the interest of the class because Plaintiff does not have interests adverse to the class and counsel has ample employment litigation experience.

Rule 23(b)(3) also requires that the class action be the superior method of adjudication. FED. R. CIV. P. 23(b)(3). Courts assess superiority by comparing the efficiency and fairness of all available methods of adjudication, such as individual actions, consolidation, intervention, and joinder. 5 MOORE'S FEDERAL PRACTICE § 23.48[2][a,c]. In *Castano*, the Fifth Circuit recognized a number of factors to consider in determining whether a class action is superior to individual lawsuits. 84 F.3d at 748. In this case, Defendants note the difficulty in calculating individual damages as a factor against manageability and urges the Court to decertify the Rule 23 class. However, the main legal issues in this case can be determined on a representative basis and individual questions with respect to damages do not defeat class action treatment. *See In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001). Therefore, this Court finds that the difficulties likely to be encountered in managing this case as a class action do not rise to the level of making individual lawsuits a superior method of adjudication. As such, the Court finds that Plaintiff's conditional class satisfies the Rule 23 requirement of adequate representation, and Defendants' motion to decertify is DENIED.

**V.**

Based on the foregoing, Plaintiff's Motion to Strike (**Instrument No. 239**) is **DENIED**, re, Defendants' motion to strike. (**Instrument No. 246**) is **DENIED**, Defendants' Motion to Decertify the FLSA Class (**Instrument No. 228**) is **DENIED**, and Defendants' Motion to Decertify the Rule 23 Class (**Instrument No. 229**) is **DENIED**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the ____ day of December, 2015, at Houston, Texas.

VANESSA D. GILMORE
**UNITED STATES DISTRICT JUDGE**